**PORTER HAYDEN COMPANY,
Plaintiff–Appellant,**

v.

**CENTURY INDEMNITY COMPANY,
Defendant–Appellee.**

No. 96–2556.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1997.

Decided Feb. 17, 1998.

**ARGUED:** Robert Morley Wright, Whiteford, Taylor & Preston, L.L.P., Baltimore, MD, for Appellant. John Gilbert Niles, O'Melveny & Myers, L.L.P., Los Angeles, CA, for Appellee. **ON BRIEF:** Dwight W. Stone, II, Whiteford, Taylor & Preston, L.L.P., Baltimore, MD, for Appellant. John P. Sweeney, Miles & Stockbridge, Baltimore, MD, for Appellee.

Before LUTTIG and MOTZ, Circuit Judges, and JONES, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judges MOTZ and JONES joined.

---

1. Appellant also argues that its interpretation of the arbitration clause is supported by the fact that the Agreement's choice-of-law provision, discussed *infra*, distinguishes between "disputes concerning the validity, interpretation and application of the Agreement" and "disputes concerning issues within the scope of the Agreement." *See* Appellant's Brief at 11–12. Timeliness defenses, appellant contends, create a dispute over

OPINION

LUTTIG, Circuit Judge:

Plaintiff-appellant and defendant-appellee, an asbestos producer and an insurer respectively, are signatories to a contract styled the Wellington Agreement, which was written to govern disputes between certain asbestos producers and asbestos insurers. In accordance with the arbitration provisions of the Agreement, appellee has submitted to an arbitration panel a substantive claim against appellant that clearly arises under and is governed by the Agreement. Plaintiff-appellant brought in state court a petition for stay of arbitration, asserting that its laches and statute of limitations defenses to appellee's claim had to be adjudicated by a court, instead of an arbitrator, and appellee removed the action to federal court. The district court rejected appellant's argument, granted appellee's subsequent motion to compel arbitration, and dismissed appellant's case *sua sponte*.

 The Wellington Agreement's arbitration clause states:

[Signatory Insureds and Insurers] shall resolve through alternative dispute resolution ... any disputed issues within the scope of the Agreement and the Appendices hereto.

§ VIII, ¶ 6, J.A. at 52. Thus, if appellant's laches and statute of limitations defenses fall "within the scope of the Agreement," then the Agreement requires their arbitration. Appellant argues that, because the Agreement does not include any provisions regarding the timeliness of a demand for arbitration, issues as to timeliness are not within the scope of the Agreement and therefore are issues for judicial determination, rather than arbitration. And this is a plausible reading of the contractual language at issue.[1]

the "validity" of the contract, which—as demonstrated by the choice-of-law provision—is distinct from a dispute "within the scope of the Agreement." We are not persuaded that the choice-of-law provision is intended to distinguish between two different and mutually exclusive types of disputes, however, because disputes "within the scope of the Agreement" will almost always require "interpretation" of the Agreement, as well.

■ The Wellington Agreement, however, is a "contract evidencing a transaction involving commerce," and therefore the scope of its arbitration clause is determined in accordance with the Federal Arbitration Act (FAA).[2] *See* 9 U.S.C. § 2. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Thus, a disputed issue is arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). This "heavy [federal] presumption of arbitrability" dictates that any ambiguity in the scope of the Wellington Agreement's arbitration clause be resolved in favor of arbitration.[3] *Peoples Security Life Insurance Co. v. Monumental Life Insurance Co.*, 867 F.2d 809, 812 (4th Cir.1989). Consequently, because it can fairly be said that appellant's timeliness defenses to the appellee's Wellington Agreement claim fall within the "scope of the Agreement," those defenses must be submitted to arbitration, despite appellant's at least plausible, contrary construction of the arbitration clause. *Cf. Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 447, 455 (4th Cir.1997) (holding that under a "standard arbitration clause covering any disputed transaction occurring in connection with the [parties'] agreement," a laches defense "is a matter of 'procedural arbitrability' solely for the arbitrators' decision and not for the court").

■ In order to evade the clear mandate of federal law, appellant contends that the federal presumption of arbitrability does not extend to the Wellington Agreement's arbitration clause because the choice-of-law provision of the Agreement confirms that the parties intended that Maryland arbitration law, rather than federal arbitration law, be applied to disputes over arbitrability. And, according to appellant, under Maryland law, the timeliness of a demand for arbitration is a question for the courts, not the arbitrator. *See* Appellant's Brief at 18.

The Wellington Agreement's choice-of-law provision provides:

> All disputes concerning the validity, interpretation and application of the Agreement or the Appendices hereto, or any provision thereof, and all disputes concerning issues within the scope of the Agreement shall be determined in accordance with applicable common law of the states of the United States.

§ XXII, ¶ 2, J.A. at 62. This provision obviously does not expressly specify whether state or federal arbitrability law should be applied. Nevertheless, the broad, general language of the provision could be thought to encompass issues of arbitrability and, thus, to require the application of Maryland law to the construction of the Agreement's arbitration clause.[4]

The Supreme Court has, however, squarely rejected the argument that a federal court should read a contract's general choice-of-law provision as invoking state law of arbitrability and displacing federal arbitration law. The Court considered the interplay of an

---

In any event, appellant's argument, at most, creates an ambiguity about the proper interpretation of the arbitrability clause.

**2.** The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

**3.** We have specifically rejected appellant's argument that the federal presumption in favor of arbitrability applies only to labor cases. *See*

*Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 455 n. 63 (4th Cir.1997).

**4.** It is far from clear that the "applicable common law of the states of the United States" to which the Agreement's choice-of-law provision refers is Maryland law, as opposed to the law of another state or to some general, state-law analog to "general federal common law." *See* J.A. at 150–51. For present purposes, however, we will assume that the phrase refers to Maryland law.

arbitration clause and a general choice-of-law provision in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). In *Mastrobuono*, the contract's choice-of-law provision specified that the "entire agreement" would "be governed by the laws of the State of New York." *Id.* at 58–59, 115 S.Ct. at 1217. The contract also provided that " 'any controversy' arising out of the transactions between the parties" would "be settled by arbitration." *Id.* at 59, 115 S.Ct. at 1217. The agreement contained no express reference to the availability of punitive damages. *See id.* Under New York law, courts, but not arbitrators, could award punitive damages. *See id.* at 53, 115 S.Ct. at 1214. The lower courts in *Mastrobuono* held that the contract's broad choice-of-law provision was intended to invoke New York arbitration law—as well as New York substantive law—and that, as a result, the arbitrator had no power to award punitive damages. *See id.* at 54–55, 115 S.Ct. at 1214–15.

The Supreme Court reversed and held that the choice-of-law provision should be read, at most, to "include only New York's substantive rights and obligations, and not the State's allocation of power between [courts and arbitrators]." *Id.* at 60, 115 S.Ct. at 1217. The Court acknowledged that the provision's phrase "New York law" could mean "New York decisional law, including that State's allocation of power between courts and arbitrators, notwithstanding otherwise

applicable federal law," *id.*, but noted that the provision could also reasonably be read merely to specify "what law to apply to disputes arising out of the contractual relationship," *id.* Because the choice-of-law provision was not "an unequivocal exclusion of punitive damages claims" from the scope of the arbitration clause, *id.*, the Court concluded that it would not read the provision as narrowing the scope of arbitrable issues to those arbitrable under New York law. The Court indicated that the choice-of-law clause merely "introduce[d] an ambiguity into an arbitration agreement," *id.* at 62, 115 S.Ct. at 1218, and "federal policy favoring arbitration" dictated that the ambiguity in the scope of the arbitration clause be resolved in favor of arbitration, *id.*

Similarly, the choice-of-law provision in the Wellington Agreement is neither an unequivocal expression of the parties' intent to commit adjudication of timeliness defenses to the court, rather than to an arbitrator, nor, more generally, an unequivocal expression of the parties' intent to invoke Maryland, rather than federal, arbitration law. The Agreement's choice-of-law provision can reasonably be read merely as specifying that Maryland substantive law be applied to resolve disputes arising out of the contractual relationship.[5] Thus, absent a clearer expression of the parties' intent to invoke state arbitration law, we will presume that the parties intended federal arbitration law to govern the construction of the Agreement's arbitration clause.[6]

---

5. Indeed, this may well be the best reading of the provision, since choice-of-law provisions typically embody the parties' choice of one state's laws over another's, rather than express a preference between federal and state law. *Cf. Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 489–90, 109 S.Ct. 1248, 1261, 103 L.Ed.2d 488 (1989) (Brennan, J., dissenting) ("It seems to me beyond dispute that the normal purpose of such choice-of-law clauses is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law."). As the district court noted, a choice-of-law provision specifying " 'the applicable common law of the states of the United States' would be a peculiar way indeed to say 'do not apply the Federal Arbitration Act.' " J.A. at 151.

6. The Supreme Court's decision in *Volt Information Sciences, Inc. v. Board of Trustees of Leland*

*Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), does not require a contrary result. The *Volt* Court affirmed the decision of the California Court of Appeal that the parties in that case intended a general choice-of-law clause to incorporate the California rules of arbitration into their arbitration agreement. *See id.* at 474–76, 109 S.Ct. at 1253–54. The Court made clear in *Mastrobuono*, however, that the *Volt* Court affirmed that decision only out of deference to the California court's construction of its own state law:

The dissent makes much of the similarity between [the *Mastrobuono* ] choice-of-law clause and the one in *Volt*, which we took to incorporate a California statute allowing a court to stay arbitration pending resolution of related litigation. In *Volt*, however, we did not interpret the contract de novo. Instead, we deferred to the California court's construction of its own state's law. 489 U.S., at 474, 109

The district court therefore correctly held that the heavy federal presumption in favor of arbitrability applies in this case and that the Agreement's arbitration clause, so construed, requires that appellant's timeliness defenses be submitted for arbitration. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED.*

S.Ct., at 1253 ("the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review"). In the present case, by contrast, we review a federal court's interpretation of this contract, and our interpretation accords with that of the only decision-maker arguably entitled to deference—the arbitrator.
*Mastrobuono,* 514 U.S. at 60 n. 4, 115 S.Ct. at 1217 n. 4.