SMITH BARNEY, INC., Plaintiff v. RICHARD BARDOLPH, Defendant

No. COA98-312

(Filed 29 December 1998)

**1. Arbitration and Mediation— securities brokerage agreement—arbitration clause—Federal Arbitration Act**

A securities brokerage agreement is a "contract evidencing a transaction involving commerce" so that the application of an arbitration clause in the agreement is to be determined in accordance with the Federal Arbitration Act.

**2. Arbitration and Mediation— time-bar defenses—question for arbitrator**

Time-bar defenses within arbitration agreements must be resolved by an arbitrator and not by the trial court.

Appeal by defendant from judgment filed 4 December 1997 by Judge H. W. Zimmerman, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 28 October 1998.

*Kennedy Covington Lobdell & Hickman, L.L.P., by Cory Hohnbaum and Joseph W. Moss, Jr., for plaintiff-appellee.*

*Davis Gordon Doner & Chandler, by Lawrence U.L. Chandler, for defendant-appellant.*

MARTIN, Mark D., Judge.

Defendant Richard Bardolph (Bardolph) appeals from the trial court's grant of plaintiff's motion for summary judgment and denial of defendant's motions to dismiss and to compel arbitration.

In 1982 Bardolph opened a securities account with plaintiff Smith Barney, Inc., (Smith Barney) with the objectives of preserving assets, producing income, and investing in securities that are conservative in nature.

As a Smith Barney customer, Bardolph was required to sign a Customer Agreement that contained the following arbitration clause:

The undersigned [Bardolph] agrees that *all controversies between the undersigned and Smith Barney* and or any of its officers, directors, or employees concerning or arising from (i) any account maintained with Smith Barney by the undersigned;

(ii) any transaction involving Smith Barney and the undersigned, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, whether such controversy arose prior, on or subsequent to the date hereof, *shall be determined by arbitration before the National Association of Securities Dealers, Inc.*, the New York Stock Exchange, the American Stock Exchange, or any recognized arbitration facility provided by any exchange and *in accordance with the rules of such body then obtaining.* (emphasis added).

Between May 1990 and December 1990 Smith Barney recommended and sold Bardolph more than $156,000 worth of Airfund I and Airfund II International Limited Partnerships. Bardolph claims he was "force fed enormous amounts of highly unsuitable limited partnerships through aggressive marketing tactics and misleading data manufactured and promoted by the [Smith Barney] broker[s]." Bardolph contends these investments were inconsistent with his stated account objectives of income preservation and appreciation of invested capital. Bardolph alleges, among other things, that Smith Barney made false and misleading statements regarding the nature of these limited partnerships during the initial sale and continually misrepresented the partnership values of these ventures on Bardolph's monthly statements.

On 23 December 1996 Bardolph filed an arbitration claim against Smith Barney with the National Association of Securities Dealers, Inc. (NASD). The arbitration claim alleged, among other things, counts of breach of fiduciary duty, common law fraud, fraudulent concealment, negligence, breach of contract, and failure to supervise. On 19 March 1997 Bardolph submitted a Uniform Submission Agreement to the NASD to arbitrate "in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization."

On 2 June 1997 the parties agreed to stay the NASD arbitration proceeding and entered a stipulation allowing Smith Barney to file a lawsuit in Guilford County Superior Court to determine whether Bardolph's claims were eligible for arbitration.

On 21 July 1997 Smith Barney filed a complaint for declaratory judgment contending that Bardolph filed his arbitration claim more than six years after the events giving rise to his claim and therefore Bardolph's claims were barred by section 10304 of the NASD Code of

Arbitration Procedure (NASD Code). Section 10304, Time Limitation Upon Submission, reads:

> No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This Rule shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.[1]

National Association of Securities Dealers, Inc., Code of Arbitration Procedure, NASD Manual ¶ 10304 (1997).

In response, Bardolph filed a motion to dismiss the complaint and a motion to compel arbitration on 17 September 1997. Bardolph argued Smith Barney was obligated to arbitrate any dispute with its customers under Section 10301 of the NASD Code. Section 10301(a), Required Submission, states:

> Any dispute, claim, or controversy eligible for submission . . . between a customer and a member and/or associated person arising in connection with the activities of such associated persons shall be arbitrated under this code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

National Association of Securities Dealers, Inc., Code of Arbitration Procedure, NASD Manual ¶ 10301(a) (1997). Smith Barney filed a motion for summary judgment on 24 October 1997.

On 4 December 1997, after reviewing the briefs and hearing arguments from the parties, the trial court granted Smith Barney's motion for summary judgment and denied Bardolph's motions to dismiss and to compel arbitration. Bardolph appealed to this Court.

On appeal, the question for this Court is whether the six-year time limitation found in section 10304 of the NASD Code should be interpreted by an arbitrator or by the trial court.

[1] At the outset we note the agreement between the parties is a "contract evidencing a transaction involving commerce" and therefore the application of the arbitration clause in the agreement is

---

1. NASD Code of Arbitration Procedure Section 12 was renumbered as Section 10301, Section 15 was renumbered as Section 10304, and Section 35 was renumbered as Section 10324, without any substantial alterations.

determined in accordance with the Federal Arbitration Act (FAA). 9 U.S.C. § 2 (1970). *See also Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir. 1998). "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785 (1983). "[S]ection 2 created a body of federal substantive law applicable in both state and federal courts that compelled the courts to abandon their hostility toward arbitration agreements and required their vigorous enforcement." *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 452 (4th Cir. 1997).

Brokerage agreements, like the agreement between Bardolph·and Smith Barney, fall within the broad construction of the term "involving commerce" under section 2 of the FAA. *PaineWebber Inc. v. Elahi*, 87 F.3d 589, 593 (1st Cir. 1996), *citing Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-277, 130 L. Ed. 2d 753, 763-766 (1995). *See also Glass*, 114 F.3d at 452. Accordingly, as both parties concede in brief, the issues regarding the arbitration clause are governed by federal law pursuant to the FAA.

[2] Bardolph contends an arbitrator, not the trial court, should interpret section 10301 of the NASD Code of Arbitration Procedure and determine whether Bardolph's claims are barred as untimely under section 10304. We agree.

Although one of first impression for the North Carolina appellate courts, ten federal circuits have previously addressed this question. The First, Second, Fifth, Eighth, and Ninth Circuits have generally found questions of mere delay, laches, statute of limitations, and untimeliness to be issues reserved for resolution by arbitrators, not courts. *See PaineWebber Inc. v. Elahi*, 87 F.3d 589 (presumption parties intended to arbitrate the timeliness of the submission of their dispute because the parties made an agreement to arbitrate 'all controversies' concerning investment transactions); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2nd Cir. 1991) (strong presumption of arbitrability when the contract contains a broad arbitration clause); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2nd Cir. 1996) (Section 10324 of the NASD Code commits all issues of arbitrability and timeliness to the arbitrators); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750 (5th Cir. 1995) (time limitations defenses raised at trial court are issues of procedural arbitrability and must be decided by arbitrator); *FSC Securities Corp. v. Freel*, 14 F.3d 1310 (8th Cir. 1994) (by parties agreeing to be governed by the NASD Code, it is a

clear and unmistakable expression of their intent to give arbitrators discretion via section 10324 to interpret section 10301's time limitation); *O'Neel v. National Ass'n of Securities Dealers*, 667 F.2d 804 (9th Cir. 1982) (the validity of time-barred defenses to enforcement of arbitration agreements should be determined by arbitrators rather than by the courts).

The Third, Sixth, Seventh, Tenth, and Eleventh Circuits, on the other hand, have held the trial court, not an arbitrator, must resolve issue of untimeliness in an arbitration agreement. *See PaineWebber Inc. v. Hofmann*, 984 F.2d 1372 (3rd Cir. 1993) (trial court should bar arbitration if claim submitted to arbitration undisputably arose out of events more than six years prior to filing of arbitration); *Roney and Co. v. Kassab*, 981 F.2d 894 (6th Cir. 1992) (trial court should decide whether action to enforce arbitration clause is barred by time limitation defense); *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509 (7th Cir. 1992) (trial court must determine whether section 10304 bars the arbitrator from exercising jurisdiction); *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith*, 78 F.3d 474 (10th Cir. 1996) (Section 10304 defines the arbitrators' substantive jurisdiction and the trial courts must decide whether a claim is time-barred under that provision); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381 (11th Cir. 1995) (Section 10304 of the NASD Code is a substantive eligibility requirement and the trial court may conduct a 'mini-trial' on timeliness of arbitration claims).

Although the Fourth Circuit has apparently not considered this precise question, Fourth Circuit cases weigh heavily in favor of requiring an arbitrator, not the trial court, to decide issues relating to time-bar defenses in arbitration agreements.

In *County of Durham v. Richards & Associates, Inc.*, 742 F.2d 811 (4th Cir. 1984), plaintiff filed a motion to stay arbitration because the agreement to arbitrate with defendant contained a two-year limitation period, which plaintiff claimed expired. *Id.* at 812. Relying on precedent from the Second, Ninth, and Eleventh Circuits, the Fourth Circuit Court held, "[w]hen a [time] limitations question is raised, to defeat a motion to compel arbitration, . . . the question is one for the arbitrator, not the courts." *Id. at* 815. Additionally, using the rationale from *Moses H. Cone Hospital*, 460 U.S. 1, 74 L. Ed. 2d 765, the Fourth Circuit stated:

"The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

*County of Durham*, 742 F.2d at 815 (*quoting Moses*, 460 U.S. at 24-25, 74 L. Ed. 2d at 785).

The Fourth Circuit again addressed the issue of arbitrability in *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446 (4th Cir. 1997). In *Glass* plaintiff and defendant were scheduled for arbitration regarding defendant's alleged mishandling of plaintiff's stock brokerage account. *Id.* at 446-449. Upon motion of the defendant, the trial court dismissed the scheduled arbitration on the ground of laches. *Id.* at 449. On appeal, the Fourth Circuit reversed stating:

When faced with an arbitration case . . . the district court's role is limited to [i] determining whether the contract to arbitrate is valid and [ii] whether the dispute involved in the arbitration is within the subject matter of the contract to arbitrate. Once having made those determinations, the district court's role ends and the Act mandates that the district court enter an order of arbitration.

*Id.* at 457.

The *Glass* court found the existence of a signed arbitration agreement between the two parties was sufficient to establish a valid contract to arbitrate. *Id.* at 456-457. Furthermore, in determining the dispute over laches was within the subject matter of the contract, the court held, "[d]efenses of laches, mere delay, statute of limitations, and untimeliness constitute a broad category of waiver defenses that may be raised to defeat compelled arbitration. Laches, like its companion defenses, however, is a matter of 'procedural arbitrability' solely for the arbitrators' decision and not for the court." *Id.* at 455.

The Fourth Circuit most recently addressed the question of arbitrability in *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380 (4th Cir. 1998). In *Porter* the parties signed a Wellington Agreement, a contract that governs disputes between asbestos producers and asbestos insurers. *Id.* at 381. The Wellington Agreement contained an arbitration clause which read, "[Signatory Insureds and Insurers] shall resolve through alternative dispute resolution . . . any disputed issues within the scope of the Agreement . . . ." *Id.* Defendant submitted a claim to an arbitration panel regarding the Agreement and in response, plaintiff filed a petition for stay of arbitration asserting that

plaintiff's laches and statute of limitations claims had to be adjudicated in court, not by an arbitrator. *Id.* The trial court rejected plaintiff's argument and the Fourth Circuit affirmed. *Id.* at 381, 384.

In accordance with the FAA, the *Porter* court relied upon the " 'heavy [federal] presumption of arbitrability' [] that any ambiguity in the scope of the Wellington Agreement's arbitration clause be resolved in favor of arbitration." *Id.* at 382 *(quoting Peoples Sec. Life Ins. v. Monumental Life Ins.*, 867 F.2d 809, 812 (4th Cir. 1989)). Following the rationale from *Glass*, the *Porter* court stated, "because it can fairly be said that [plaintiff's] timeliness defenses . . . fall within the 'scope of the Agreement,' those defenses must be submitted to arbitration, despite [plaintiff's] at least plausible, contrary construction of the arbitration clause." *Id.* at 382.

Accordingly, consistent with six federal circuits, including the Fourth Circuit, we conclude time-bar defenses within arbitration agreements must be resolved by an arbitrator, not the trial court.

Our holding is reinforced by the language within section 10324 of the NASD Code. Section 10324 states, "[t]he arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any rulings by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding on the parties." National Association of Securities Dealers, Inc., Code of Arbitration Procedure, NASD Manual ¶ 10324 (1997).

When interpreting the contents of an arbitration agreement to determine if a particular merit related dispute is arbitrable, the common law rule of contract interpretation states that " 'a court should construe ambiguous language against the interest of the party that drafted it.' " *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 *(quoting Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 131 L. Ed. 2d 76, 87 (1995)). The purpose of this rule is to protect the party who did not choose the language from an unintended or unfair result. *Id.* *(quoting Mastrobuono*, 514 U.S. at 63, 131 L. Ed. 2d at 87).

In the instant case, Smith Barney drafted the Customer Agreement, including the arbitration clause, which stated that all controversies between the parties "shall be determined by arbitration before the National Association of Securities Dealers, Inc., . . . in accordance with the rules of such body then obtaining." Thus, Smith Barney agreed in the Customer Agreement that any disputes would be

SMITH BARNEY, INC. v. BARDOLPH

[131 N.C. App. 810 (1998)]

handled in accordance with the provisions found in the NASD Code, including section 10324.

" '[T]he parties' adoption of [section 10324] is a 'clear and unmistakable' expression of their intent to leave the question of arbitrability to the arbitrators. In no uncertain terms, Section [10324] commits interpretation of all provisions of the NASD Code to the arbitrators.' " *Conroy v. Merrill Lynch, Pierce, Fenner & Smith*, 899 F. Supp. 1471, 1476 (W.D.N.C. 1995) (*quoting FSC Securities Corp. v. Freel*, 14 F.3d 1310, 1312-1313 (8th Cir. 1994)). *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 131 L. Ed. 2d 985 (1995) (need 'clear and unmistakable evidence' showing parties agreed to arbitrate.) "[T]he section [10304] time bar is part of the NASD Code of Arbitration Procedure, thus one would assume it is intended to be applied by the NASD itself to control its own procedures, rather than a rule that is somehow 'off-limits' for arbitrators to apply." *PaineWebber Inc. v. Elahi*, 87 F.3d 589, 601 (1st Cir. 1996). Accordingly, by signing the Customer Agreement, including the arbitration clause, Smith Barney consented to allowing an arbitrator, pursuant to section 10324 of the NASD Code, to interpret and determine the applicability of the time-bar provision found in section 10304.

Consistent with the rationale of the Fourth Circuit cases discussed earlier, North Carolina trial courts have a very narrow role in determining arbitrability. As articulated in *Glass*, the trial court's role is limited to determining (i) whether the contract to arbitrate is valid and (ii) whether the dispute involved in the arbitration is within the subject matter of the contract to arbitrate. *Glass*, 114 F.3d at 457.

It is undisputed here that a valid agreement to arbitrate exists between Bardolph and Smith Barney. Moreover, sections 10304 and 10324 of the NASD Code, when read together, demonstrate the parties had a "clear and unmistakable" intent to have an arbitrator decide the six-year time limitation question.

Accordingly, we reverse the trial court's grant of summary judgment in Smith Barney's favor and remand for entry of an order granting defendant's motion to dismiss plaintiff's complaint for declaratory judgment and defendant's motion to compel arbitration.

Reversed and remanded with instructions.

Judges MARTIN, John C., and HUNTER concur.