SHIRLEY S. CARPENTER, DIANE CARSON, AND SHAWN COLVARD, PLAINTIFF-APPELLEES V. GEORGE BROOKS, SALOMON SMITH BARNEY, INC., PINNACLE GROUP, INC., AND LEGG MASON WOOD WALKER, INC., DEFENDANT-APPELLANTS

No. COA99-878

(Filed 29 August 2000)

1. **Arbitration and Mediation— federal or state act—transaction involving commerce**

The trial court erred by failing to apply the Federal Arbitration Act (FAA) in an action arising from a dispute between a stock broker and his clients. The FAA applies where there is a contract evidencing a transaction involving commerce, and brokerage agreements fall within the broad construction of the term "involving commerce." Where it applies to a particular contract, the FAA supersedes conflicting state law even if the contract has a choice of law provision.

2. **Appeal and Error— appealability—interlocutory order— Federal Arbitration Act**

Although vacatur of an arbitration award is an interlocutory order, the FAA, applicable in this case, provides for immediate appeal from such orders.

CARPENTER v. BROOKS

[139 N.C. App. 745 (2000)]

**3. Arbitration and Mediation— vacatur of award—sufficiency of evidence**

The trial court's error in applying the North Carolina Uniform Arbitration Act rather than the Federal Arbitration Act (FAA) was prejudicial where findings involving the arbitration panel's alleged impatience with and harassment of plaintiffs, refusal to consider evidence, and partiality were not supported by the evidence. Further findings that the conduct of the arbitration panel rose to the level of misconduct and that plaintiffs were not given a fair and impartial hearing were more appropriately considered conclusions and were not supported by findings; even accepting the denomination as findings, there was insufficient supporting evidence. Under the FAA, an arbitration award is presumed valid and only clear evidence will justify vacating an award.

Appeal by defendant corporations from order entered 16 April 1999 by Judge James U. Downs in Graham County Superior Court. Heard in the Court of Appeals 8 May 2000.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Philip J. Smith, for plaintiff-appellees.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by Cory Hohnbaum, for defendant-appellant Salomon Smith Barney, Inc.*

*Smith Helms Mulliss & Moore, L.L.P., by Bradley R. Kutrow, for defendant-appellant The Pinnacle Group.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Jack L. Cozort, Regina J. Wheeler, and R. Bruce Thompson, II, for defendant-appellant Legg Mason Wood Walker, Inc.*

EDMUNDS, Judge.

Defendants Salomon Smith Barney, Inc. (Smith Barney), Pinnacle Group, Inc. (Pinnacle), and Legg Mason Wood Walker, Inc. (Legg Mason), appeal the trial court's vacatur of an arbitration award. We reverse.

Plaintiffs Shirley S. Carpenter (Carpenter) and Diane Carson (Carson) were introduced to defendant George Brooks (Brooks) in the autumn of 1983. At that time, Brooks was an account executive and sales agent for Shearson Lehman Brothers, Inc. (Shearson), predecessor of defendant Smith Barney, in Charlotte.

CARPENTER v. BROOKS

[139 N.C. App. 745 (2000)]

According to plaintiffs' complaint, Brooks offered to assist plaintiffs in investing insurance proceeds, which plaintiffs had received as a result of their husbands' deaths in an aviation accident. Carpenter and Carson advised Brooks that the insurance funds had to be preserved because they wanted that money to last for their lifetimes and to provide for their children's educations. They told Brooks that they knew nothing about stocks and securities and were not interested in placing the money in risky investments, but "would prefer to leave the funds in certificates of deposit rather than put them in any investments which would be more likely to jeopardize the principal." Brooks assured plaintiffs that he would make only "safe" investments and guaranteed their funds would double in five years. Thereafter, both Carpenter and Carson opened accounts at Shearson with Brooks as their broker.

When Brooks left Shearson in May 1986 to work for defendant Pinnacle, Carpenter and Carson transferred their accounts to Pinnacle. In August 1988, Brooks left Pinnacle to work for defendant Legg Mason, and Carpenter and Carson again transferred their accounts to follow Brooks. However, in 1990, plaintiffs became unhappy with Brooks and directed Legg Mason that no further trades be made in their accounts.

In October 1992, plaintiffs Carpenter and Carson filed suit against defendants alleging unauthorized securities trading, misrepresentation, breach of fiduciary duty, and failure to supervise. (A third plaintiff in the suit, Shawn Colvard, is not a party to this appeal.) In addition to the background information recited above, the following allegations were included in the complaint: (1) while Brooks was at Pinnacle, he failed to comply with Carpenter's request that certain stock be sold, and, as a result, Carpenter lost $4,443.00, for which she was reimbursed by Pinnacle; (2) Brooks paid Carpenter $9,052.50 for failing to execute a sale order in Carpenter's IRA; (3) in 1989 or 1990, when Carpenter requested that Brooks sell a certain stock then selling at $17.00 per share, Brooks refused, contending that he would wait until the stock reached $22.00 per share; when the stock failed to reach that level, Brooks made an unauthorized sale of the stock at $1.25 per share; and (4) stocks were bought and sold without plaintiffs' authorization. Plaintiffs further contended that Shearson, Pinnacle, and Legg Mason failed to manage Brooks properly, failed to make proper inquiry into plaintiffs' needs and objectives before approving their accounts, and failed to supervise Brooks' discretion over accounts.

The several defendants answered individually, each raising affirmative defenses. Brooks answered and made a motion to dismiss, claiming that plaintiffs' action was time-barred. Brooks and Shearson made motions to compel arbitration, and Shearson moved for a stay of proceedings pending the outcome of arbitration; both claimed that plaintiffs entered into agreements to arbitrate and thus the dispute should be arbitrated pursuant to the North Carolina Uniform Arbitration Act (NCUAA), N.C. Gen. Stat. §§ 1-567.1 to -567.20 (1999). Pinnacle, alleging that both Carpenter and Carson executed agreements to arbitrate "any controversy arising out of their securities transactions with Pinnacle," made a motion to dismiss or to compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16 (1999), and the NCUAA. Finally, citing both the FAA and the NCUAA, Legg Mason moved to compel arbitration and to stay the proceedings pending arbitration as to Carpenter only, because she alone signed a "Customer's Margin and Loan Consent Agreement" in which she agreed to arbitrate any disputes.

In an order filed 25 June 1993, the trial court (1) denied Pinnacle's and Brooks' motions to dismiss; (2) granted Shearson's and Pinnacle's motions to compel arbitration as to Carpenter and Carson; (3) granted Legg Mason's motion to compel arbitration as to Carpenter; (4) granted Brooks' motion to compel arbitration as to all of Carpenter's claims and as to Carson's claims for the time Brooks was employed by Shearson and Pinnacle; (5) granted Shearson's, Pinnacle's, and Legg Mason's motions for stay pending arbitration; (6) *sua sponte* ordered that all claims against Brooks should be stayed; and (7) granted Shearson's, Pinnacle's, and Legg Mason's motions for protective orders.

Plaintiffs filed a statement of claim with the National Association of Securities Dealers (NASD). Defendants answered individually: Brooks raised various statutes of limitations as defenses against Carpenter and claimed that Carson's and Carpenter's claims were meritless; Shearson similarly raised the time limitation set out in the NASD Code (six years) as a defense against Carpenter and Carson; Pinnacle raised as defenses against both Carpenter and Carson statutes of limitations, waiver and estoppel, ratification, accord and satisfaction, contributory negligence, and failure to mitigate; and Legg Mason raised as defenses to both Carson and Carpenter failure to state a claim, statute of limitations, waiver and estoppel, contributory negligence, failure to mitigate, and ratification.

The arbitration hearing covered seven days. On 21 February 1996, the panel dismissed plaintiffs' claims against Pinnacle and Legg Mason, and on 16 July 1996 entered the following award:

1. That the issues of unauthorized trades were resolved to Claimants' satisfaction and thus are denied.

2. That there has been no evidence to support the claims of churning or failure to supervise and thus these claims are denied.

3. That there has been no evidence to support the claim of fraud or constructive fraud and thus these claims are denied.

4. That the claim of breach of fiduciary duty cannot be sustained since this panel is of the opinion that at the time they were made these investments were appropriate. Every person is charged with the knowledge that there is risk in any investment.

5. Each party is responsible for their own costs, including attorney's fees.

6. That any relief not specifically addressed herein is denied.

On 14 October 1996, plaintiffs filed in superior court a motion to vacate the arbitration award, contending that "the panel collectively harassed and badgered the Plaintiffs, their witnesses and counsel," "expressed their negative opinions about the Plaintiffs' claims," "refused to hear or consider relevant and appropriate evidence," "expressed impatience with the Plaintiffs," and "exhibited partiality to the Defendants." On 16 April 1999, the trial court granted plaintiffs' motion to vacate and set the case for trial. Defendants appeal.

[1] On appeal, the issue before us is not whether the panel's award was correct, but whether the trial court properly vacated that award. We begin by addressing the question of which statute controls this dispute. While defendants argue for the application of the FAA, 9 U.S.C.A. §§ 1-16, plaintiffs contend that the appropriate act is the NCUAA, N.C. Gen. Stat. §§ 1-567.1 to -567.20. The FAA "applies where there is 'a contract *evidencing a transaction* involving commerce.'" *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 130 L. Ed. 2d 753, 766 (1995) (quoting 9 U.S.C.A. § 2). "Commerce" under the FAA means interstate or foreign commerce, *see* 9 U.S.C.A. § 1, and this Court has stated that "[b]rokerage agreements . . . fall

within the broad construction of the term 'involving commerce,' " *Smith Barney, Inc. v. Bardolph*, 131 N.C. App. 810, 813, 509 S.E.2d 255, 257 (1998); *see also Ragan v. Wheat First Securities*, 138 N.C. App. 453, 531 S.E.2d 874 (2000). Accordingly, the dispute is governed by the FAA. *See Pinnacle Group, Inc. v. Shrader*, 105 N.C. App. 168, 170-71, 412 S.E.2d 117, 120 (1992).

Plaintiffs nevertheless contend the FAA should not apply because defendants "failed to preserve this issue properly for Appeal." However, even assuming the issue was not preserved (both Pinnacle and Legg Mason cited the FAA in various filings below), we have held that a defendant's failure to raise the FAA in response to a plaintiff's motion to vacate is not fatal. *See In re Cohoon*, 60 N.C. App. 226, 230, 298 S.E.2d 729, 731 (1983). This result is consistent with our Supreme Court's holding in *Board of Education v. Shaver Partnership*, 303 N.C. 408, 424, 279 S.E.2d 816, 825 (1981), that where the FAA applies to a particular contract, that Act supersedes conflicting state law even if the contract has a choice of law provision. Because the FAA applies to the case at bar, the trial court erred in failing to apply that Act in resolving plaintiffs' motion to vacate the arbitration award.

[2] Although vacatur of an arbitration award is an interlocutory order, the FAA provides for immediate appeal from such orders. *See* 9 U.S.C.A. § 16(a)(1)(E). Therefore, this appeal is properly before this Court. The standard of review of the trial court's vacatur of the arbitration award is the same as for any other order in that we accept findings of fact that are not "clearly erroneous" and review conclusions of law *de novo. See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48, 131 L. Ed. 2d 985, 996 (1995); *ANR Coal Co., Inc. v. Cogentrix of North Carolina*, 173 F.3d 493, 496-97 (4th Cir.), *cert. denied*, 528 U.S. 877, 145 L. Ed. 2d 156 (1999).

[3] Turning to the merits of defendants' appeal, we must determine whether the trial court's error in applying the NCUAA was prejudicial. Therefore, we examine the trial court's order in light of the language of the FAA.

The FAA declares a liberal policy favoring arbitration. *See Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 74 L. Ed. 2d 765 (1983). Under the FAA, arbitration awards may be vacated only in limited situations:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C.A. § 10(a) (1999). Under the FAA, "an arbitration award is presumed valid and the party seeking to vacate it must shoulder the burden of proving the grounds for attacking its validity." *Shrader*, 105 N.C. App. at 171, 412 S.E.2d at 120 (citations omitted). Further, "[o]nly *clear* evidence will justify vacating an award." *Id.* (citation omitted).

In their motion to vacate the arbitration award, plaintiffs alleged that the panel was hostile toward them, was partial toward defendants, and refused to hear or consider relevant evidence. After a hearing on the motion, and after considering "the arguments of counsel, the pleadings in this case, the entire transcript of arbitration proceedings conducted under the offices of the National Association of Securities Dealers Inc., as well as the briefs of the part[ies]," the trial court made a number of unexceptionable findings of fact tracking the history of the case, then made the following additional findings:

9. During the hearings before the Arbitration Panel, the panel members collectively harassed and badgered the Plaintiffs, their witnesses and their counsel.

10. Members of the Arbitration Panel repeatedly expressed negative opinions about the Plaintiffs' claim[s] throughout the arbitration proceedings.

11. Members of the Arbitration Panel expressed impatience with the Plaintiffs throughout the arbitration proceedings.

12. Members of the Arbitration Panel refused to hear evidence material to the Plaintiffs' claims and otherwise failed to consider relevant and appropriate evidence. Members of the Arbitration Panel throughout the proceeding exhibited partiality to the Defendants.

13. The conduct of the Arbitration Panel in this particular case rises to the level of prejudicial misconduct.

14. As a result of the prejudicial conduct on the part of the Arbitration Panel, the Plaintiffs were not given a[] full and fair hearing by the Arbitration Panel.

Although several of the quoted findings are denominated in the trial court's order as findings of fact, we are not bound by the label used by the trial court. *See Wachacha v. Wachacha*, 38 N.C. App. 504, 507, 248 S.E.2d 375, 377 (1978). Finding 12 is at a minimum a mixture of finding of fact and conclusion of law "because it involves the application of a legal principle to a determination of facts." *Hall v. Hall*, 88 N.C. App. 297, 299, 363 S.E.2d 189, 191 (1987). Findings 13 and 14 are more aptly considered conclusions of law. As such, findings 12 through 14 are fully reviewable on appeal. *See id.*

Because the above-quoted findings lay the foundation for the trial court's conclusions of law, we examine each of the findings to determine if they are supported by competent evidence, and, in turn, whether they support vacatur of the arbitration award.

## Findings 9-11

In their motion to vacate, plaintiffs alleged that the panel showed impatience with them, harassed and badgered them and their witnesses, and expressed negative opinions about plaintiffs' claims. Although there is some support in the record for the allegations that the panel occasionally expressed impatience with repetitive testimony, these instances are infrequent and do not rise to the level of misconduct. Plaintiffs' evidence was presented over six hearing days. The panel's comments to the parties are little different 'from the admonitions to "keep moving" that trial judges routinely give to litigators. "[A]n arbitrator's legitimate efforts to move the proceedings along expeditiously may be viewed as abrasive or disruptive to a

disappointed party. Nevertheless, such displeasure does not constitute grounds for vacating an arbitration award." *Fairchild & Co., Inc. v. Richmond, F. & P. R. Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981). Similarly, an arbitrator is permitted to ask questions of witnesses, as is a judge at trial. Such questioning, which seeks to clarify testimony, is proper even if the questions are perceived as hostile so long as the examination does not prejudice either party. *See United States v. Parodi*, 703 F.2d 768 (4th Cir. 1983); *State v. Whittington*, 318 N.C. 114, 347 S.E.2d 403 (1986). Finally, while comments and statements by the panel may indicate occasional frustration, we do not read these comments as evidence of bias on the panel's part or as being prejudicial to plaintiffs. The conduct of which plaintiffs complain never approached the level this Court found inappropriate in *Wildwoods of Lake Johnson Assoc. v. L.P. Cox Co.*, 88 N.C. App. 88, 362 S.E.2d 615 (1987) (interpreting the NCUAA). These findings, therefore, cannot support vacatur of the arbitration award.

## Finding 12

Plaintiffs also contended that the panel refused to consider material evidence and exhibited partiality toward defendants. They sought to submit evidence of complaints and inquiries made to Pinnacle and Legg Mason about Brooks' handling of other customers' accounts. Plaintiffs' contention was that this evidence was relevant to show both that Brooks had a custom and practice of misrepresentation, and that Pinnacle and Legg Mason were on notice that Brooks required supervision. After considering arguments from attorneys for all parties, the arbitrators granted Legg Mason's motion *in limine* to exclude the evidence on relevance grounds.

A panel's refusal to hear material evidence is not by itself sufficient grounds to vacate an award. Under the FAA, vacatur is appropriate only if the panel's refusal to hear the evidence amounted to affirmative misconduct. *See Paperworkers v. Misco, Inc.*, 484 U.S. 29, 40, 98 L. Ed. 2d 286, 300 (1987). An evidentiary error by an arbitration panel "must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Newark Stereotypers' U. No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3rd Cir. 1968). A showing of prejudice is a prerequisite to relief based on a panel's evidentiary ruling. *See Employers Ins. v. National Union Fire Ins.*, 933 F.2d 1481 (9th Cir. 1991).

Plaintiffs' claim that the evidence was admissible to show that Brooks had a custom and practice of misrepresentation is unavailing. Even had that evidence been offered in a court of law pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999), a trial court's ruling that the evidence was not relevant pursuant to N.C. Gen. Stat. § 8C-1, Rule 403 (1999), *see State v. Morgan*, 315 N.C. 626, 632, 340 S.E.2d 84, 89 (1986), is reviewed under an abuse of discretion standard, *see State v. Parker*, 113 N.C. App. 216, 225, 438 S.E.2d 745, 751 (1994). Under the relaxed standard of review applicable to evidentiary rulings of arbitration panels, we hold that the panel did not commit misconduct in refusing to hear this evidence.

Plaintiffs' claim that the evidence was relevant to show that Pinnacle and Legg Mason were on notice that Brooks' behavior required careful monitoring is arguably a closer issue. However, plaintiffs' evidence indicated that Brooks misrepresented the current value of limited partnerships that plaintiffs purchased when Brooks was at Shearson in 1983. Any failure by Shearson to supervise Brooks, and any resulting financial loss to plaintiffs, cannot be attributed to Pinnacle or Legg Mason, his subsequent employers. When Brooks left Shearson for Pinnacle, and then left Pinnacle for Legg Mason, plaintiffs retained him as their broker. However, while Brooks was at Pinnacle, and later while he was at Legg Mason, both plaintiffs' securities accounts showed net gains. This evidence that Brooks successfully managed plaintiffs' accounts at Pinnacle and Legg Mason suggests that it was immaterial whether or not those firms were on notice to monitor Brooks with particular care. Moreover, assuming that the panel erred in failing to admit the evidence for this limited purpose, plaintiffs have not shown any resulting prejudice. The portion of plaintiffs' brief addressing prejudice discusses only the impact of this evidence in terms of trust between plaintiffs and Brooks. In the absence of a showing of prejudice, we cannot say the panel's ruling was misconduct justifying an order of vacatur.

Plaintiffs claimed that the panel also refused to hear evidence pertinent to their fraud claim, to the effect that Brooks guaranteed a particular return on certain investments. Carson made a proffer of evidence that she removed money from a certificate of deposit, that she provided the money to Brooks to invest in a municipal bond with a 10% rate of return, and that Brooks instead purchased stocks with those funds. Other proffered evidence included a tape recording of a conversation with Brooks and several documentary exhibits. However, our review of the record indicates that this proffered evi-

dence related to a custodial account opened by Carson for her son. Carson's claim as to this account was not subject to arbitration and was pending in a North Carolina superior court at the time of the arbitration. Because this claim was collateral to Carson's claim pertaining to trading in her own accounts, the trial court erred in finding that the panel's decision not to consider this evidence deprived plaintiffs of a fair hearing.

As to plaintiffs' claim of partiality by the panel, vacatur on this ground is permitted only where there is proof of "evident partiality," which "exists when an arbitrator's bias is 'direct, definite and capable of demonstration rather than remote, uncertain, or speculative.' " *Harter v. Iowa Grain Co.*, 211 F.3d 338, 347 (7th Cir. 2000) (citation omitted). There must exist " 'specific facts that indicate improper motives on the part of the arbitrator.' " *Consol. Coal v. Local 1643, United Mine Workers*, 48 F.3d 125, 129 (4th Cir. 1995) (citation omitted). Accordingly, "a disappointed party's perception of rudeness on the part of an arbitrator is not the sort of 'evident partiality' contemplated by the Act as grounds for vacating an award." *Fairchild*, 516 F. Supp. at 1313.

The record and transcript reveal an extended hearing during which the participants occasionally became argumentative and disputatious. However, any friction between the participants was within limits normal for a contested hearing or trial where attorneys seek zealously to represent clients with conflicting interests as the presiding official (or officials) maintains order while keeping the proceedings on track. Our review reveals that no specific facts indicating improper motives on the part of the arbitrators were established before the trial court. Consequently, we hold this finding was unsupported by the evidence and cannot support vacatur.

### Findings 13, 14

We have studied the record on appeal, the transcripts, and appellate briefs, and have considered the appellate arguments of counsel. We have reviewed the previously-discussed, properly-denominated findings of fact. After completing this examination, we conclude that findings 13 and 14, which are more appropriately considered conclusions of law, are unsupported by the findings of fact. Additionally, even accepting the trial court's denomination of the findings, there is insufficient evidence to support the findings that the panel's conduct rose to the level of "prejudicial misconduct" or that plaintiffs were denied a full and fair hearing by the arbitration panel.

In conclusion, we hold the trial court erred in finding that the conduct of the panel rose to the level of misconduct and deprived plaintiffs a full and fair hearing. The vacatur of the trial court is reversed and the case remanded to the trial court for reinstatement of the arbitration panel's award.

Reversed and remanded.

Chief Judge EAGLES and Judge LEWIS concur.