JOHN L. HALL v. EILEEN V. HALL

No. 8726DC443

(Filed 29 December 1987)

**1. Divorce and Alimony § 30— equitable distribution—time of separation**

The trial court's findings in an equitable distribution action were sufficient to support the court's conclusion that the parties separated on 26 December 1983 rather than in 1979 when plaintiff's employment was transferred to Boston, Mass., where the findings were to the effect that at all times prior to December 1983, the relationship between plaintiff and defendant was of such character as to give the appearance that they were husband and wife living together and that they held themselves out to be such.

**2. Divorce and Alimony § 30— equitable distribution—employee stock options**

Stock options granted to an employee by his or her employer which are exercisable upon the date of separation or which may not be cancelled and are thus vested as of the date of separation are marital property. Options which are not exercisable as of the date of separation and which may be lost as a result of events occurring thereafter and are thus not vested constitute separate property of the spouse for whom they may vest at some time in the future.

**3. Divorce and Alimony § 30— expert valuation testimony**

The trial court in an equitable distribution action did not err in ruling that a professor of economics was qualified to testify as an expert witness in valuing plaintiff's employee savings and investment plan, pension plan, and stock options, and in valuing the "human capital" or earning capacity of the parties.

**4. Divorce and Alimony § 30— equitable distribution—valuation of limited partnership—sailboat as marital property—insufficient evidence**

The evidence in an equitable distribution action did not support the trial court's valuation of a limited partnership tax shelter purchased by plaintiff husband. Furthermore, the court erred in including a sailboat valued at $17,000 in the marital property to be distributed to plaintiff where all discussions concerning the sailboat took place off the record.

**5. Divorce and Alimony § 30— equitable distribution—equal division of marital assets**

The facts found by the trial court did not compel an unequal division of the marital assets in defendant wife's favor, and the trial court did not abuse its discretion in concluding that an equal division was equitable.

APPEAL by plaintiff and cross-appeal by defendant from *Bissell, Judge.* Order entered 30 December 1986 in District Court, MECKLENBURG County. Heard in the Court of Appeals 29 October 1987.

Plaintiff and defendant were married in 1960. In May 1985, Mr. Hall brought this action for absolute divorce on the ground of one year's separation, alleging in his complaint that the parties had lived separately since the summer of 1979. In her answer Mrs. Hall alleged that the parties had separated in December 1983. She asserted counterclaims seeking alimony and equitable distribution of the marital property. A judgment of absolute divorce was entered 5 August 1985. Defendant's claim for equitable distribution was heard in August 1986 and on 30 December 1986 the trial court entered an order providing for distribution of the parties' marital property. Both parties appeal.

*Mark A. Michael and Tharrington, Smith & Hargrove, by Carlyn G. Poole, for plaintiff-appellant, cross-appellee.*

*Myers, Hulse & Brown, by R. Kent Brown, for defendant-appellee, cross-appellant.*

MARTIN, Judge.

In his appeal plaintiff contends the court erred: (a) in determining the date of the parties' separation; (b) by classifying certain stock options held by the plaintiff as marital property; (c) by the manner in which it directed that such stock options be distributed; (d) by permitting a witness offered by defendant to give expert valuation testimony; and (e) by classifying a sailboat as marital property. By her cross-appeal defendant contends the court erred and abused its discretion by ordering an equal division of the marital assets. For the reasons which follow, we find error in the trial court's classification and distribution of the parties' property and remand this case for additional proceedings in accordance with law.

*Plaintiff's Appeal*

[1]   Plaintiff first contends the court erred in concluding that the parties separated on 26 December 1983, thereby establishing that date as the date upon which the marital property was to be val-

ued. He argues that the court should have found that the parties separated in 1979. We disagree.

The trial court, in a portion of the judgment designated Findings of Facts, concluded that the parties separated on 26 December 1983. Generally, findings of fact are binding and conclusive on appeal if supported by any competent evidence; however, if the court's determination is a mixture of findings of fact and conclusions of law, the determination is itself reviewable by the appellate courts. *Jones v. Andy Griffith Products, Inc.*, 35 N.C. App. 170, 241 S.E. 2d 140, *disc. rev. denied*, 295 N.C. 90, 244 S.E. 2d 258 (1978). In this case the finding regarding the date of separation is a mixed finding and conclusion because it involves the application of a legal principle to a determination of facts. Therefore, we must determine whether facts otherwise found by the trial court are sufficient to support its legal determination that separation occurred on 26 December 1983.

> Separation, as this word is used in the divorce statutes, implies living apart for the entire period in such manner that those who come in contact with them may see that the husband and wife are not living together. For the purpose of obtaining a divorce under . . . G.S. 50-6, separation may not be predicated upon evidence which shows that during the period the parties have held themselves out as husband and wife living together, nor when the association between them has been of such character as to induce others who observe them to regard them as living together in the ordinary acceptation of that descriptive phrase.

*Young v. Young*, 225 N.C. 340, 344, 34 S.E. 2d 154, 157 (1945). The same test for determining the date of separation is applicable under the equitable distribution statutes, G.S. 50-20 *et seq*. The Court made the following findings of fact relevant to the issue of when separation occurred:

> (a) That in November, 1978, Plaintiff received a job promotion and transfer to Boston, Massachusetts. That Plaintiff moved to Boston, Massachusetts where he shared an apartment furnished by his employer with several co-workers. At the time of the transfer, Plaintiff, Defendant and the minor children, three of which were in public school resided in Charlotte, North Carolina and it was decided that Defendant

and the minor children should remain in Charlotte, North Carolina until the end of that school year. That in early 1979 Plaintiff initiated discussions concerning separation from Defendant and Defendant retained the services of an attorney to write a letter to Plaintiff concerning his financial responsibilities should the parties separate. That in response to said letter Plaintiff called Defendant and advised her to terminate the services of her attorney as they were not going to separate. That thereafter, Defendant did terminate the services of her attorney and did not seek further legal counsel until November or December, 1983. That subsequent to the conversation concerning her termination of the services of her lawyer, the subject of separation was not mentioned until November, 1983, up to which time the family relationship had returned to the same status as had existed prior to Plaintiff's transfer to Boston, Massachusetts.

(b) That in late spring or early summer, 1979, Plaintiff and Defendant began discussing the move of the family to Boston, Massachusetts. That in the summer of 1979, Plaintiff returned to his home in Charlotte to assist his wife and two of the children fly [sic] to the Boston area to look at homes. That while in Boston, on one night Plaintiff and Defendant occupied the same hotel room and the children occupied a second hotel room.

(c) That while in Boston, Massachusetts, Plaintiff and Defendant, along with their children, looked at a number of homes to purchase [sic], however, did not decide on a particular home.

(d) That during the fall of 1979, the family home located in Charlotte was placed on the market for sale but did not sell as the real estate market was severely depressed.

(e) That Thanksgiving and Christmas, 1979, Plaintiff returned to the Charlotte home and resided with his family over the holidays and at no time did he mention wishing to separate from Defendant.

(f) That for the year 1979, Plaintiff and Defendant filed a joint tax return wherein Plaintiff listed his home address to be the same as Defendant's.

Hall v. Hall

(g) That in or about March, 1980, Plaintiff and Defendant again discussed moving to Boston, Massachusetts. At that time, Plaintiff advised Defendant that he felt it was in the best interest of the children that they finish high school in Charlotte and that it would be prohibitively expensive for the family to move to Boston based on the cost of living in that area.

(h) That during the summer of 1980, Plaintiff, Defendant and three of the children went to the North Carolina coast for a family vacation for approximately five days.

(i) That Plaintiff returned to the home in Charlotte, North Carolina several times during the year and at both Thanksgiving and Christmas in 1980. During the year 1980, Plaintiff purchased for the home and use in the home a sofa, loveseat, reclining chair [sic], five seats to go around a den table at a cost of over $2,000.00. During the Christmas season of 1980, Plaintiff painted the exterior of the family home. On each of these occasions Plaintiff stayed in the home occupying the same bedroom (but a separate bedroom from Defendant) as he had occupied before his move to Boston. At no time did Plaintiff mention to Defendant during the year 1980 his desire to separate from her or his contention that he was already separated from her.

(j) During the year 1981, Plaintiff returned to the home in Charlotte on several occasions during the year plus at Thanksgiving and Christmas. On each of these occasions Plaintiff stayed within the home occupying the same bedroom as he had occupied before his move to Boston. At no time did Plaintiff mention to Defendant during the year 1981 his desire to separate from her or his contention that he was already separated from her.

(k) That in the year 1982, Plaintiff returned to the home in Charlotte on several weekends plus for his son's graduation in June, 1982 and at Thanksgiving and Christmas. At Thanksgiving, 1982, Plaintiff was wearing his wedding band which he had not worn in a number of years. On each of these occasions Plaintiff stayed within the home occupying the same bedroom as he had occupied before his move to Boston. During the year 1982, Plaintiff further expended the

sum of $725.00 to paint the inside of the family home located in Charlotte. At no time did Plaintiff mention to Defendant during the year 1982 his desire to separate from her or his contention that he was already separated from her.

(l) During the year 1983, Plaintiff returned to the Charlotte residence on a number of occasions and resided therein including Thanksgiving and Christmas. That Plaintiff has not resided within the family residence since December 26, 1983. On the occasions during 1983 when he stayed within the home he occupied the same bedroom as he had occupied before his move to Boston. That at no time did Plaintiff mention to Defendant up until November, 1983, his desire to separate from her or his contention that he was already separated from her.

(m) That Plaintiff wrote Defendant on a number of occasions between the time he was transferred to Boston and December 26, 1983 and on all occasions addressed the envelope as [sic] "Mrs. J. L. Hall." That Defendant has introduced into evidence eleven such envelopes. That subsequent to December 26, 1983, when Plaintiff wrote Defendant he addressed the envelopes [sic] "E. V. Hall" thus deleting "Mrs." That Defendant has introduced eighteen such envelopes.

(n) That between the time Plaintiff moved to Boston and December 26, 1983, Plaintiff regularly used the charge accounts in both names and billed to the family address. Said items include items purchased for Plaintiff's personal consumption and for family use. These bills were paid by Defendant with monies provided to her by Plaintiff.

(o) That on or about March 12, 1980, Plaintiff purchased a vehicle from Carolina AMC Jeep Renault, Inc. [sic] at which time the purchase order and invoice were prepared showing his home address to be 7435 Pine Lake Lane, Charlotte, North Carolina, that being the family home address. That Plaintiff signed said order and invoice.

(p) That after his move to Boston and before December 26, 1983, Plaintiff wrote Defendant on a number of occasions and on a number of these occasions said he would be traveling "home" at some point in the future, said reference being

to the 7435 Pine Lake Lane, Charlotte, North Carolina ad-
dress. That Defendant has introduced into evidence letters
written by Plaintiff to Defendant during the time-frame in
which he referenced the Charlotte address as his "home."

(q) That Plaintiff listed his home address as being located
at 7435 Pine Lake Lane, Charlotte, North Carolina, up
through the year 1982 on his automobile insurance policy.

(r) That in the year 1983, Defendant received a
Christmas card addressed to Mr. and Mrs. J. L. Hall, 7435
Pine Lake Lane, Charlotte, North Carolina from Ben and Bet-
ty Chreitzberg. That on said Christmas card a personal note
was written to Plaintiff which read as follows: "Thanks for
your help in 1983!" signed Ben. That Ben Chreitzberg was
Plaintiff's roommate in the Boston area the entire year of
1983. The card makes no mention of the parties being sepa-
rated [sic], it is addressed to both parties and mailed to the
home address in Charlotte, North Carolina. That said Christ-
mas card was introduced into evidence by Defendant.

(s) That in or about March, 1981, Plaintiff rented a car
through National Car Rentals in Fayetteville, North Carolina
and indicated on the rental slip his home address was 5435
[sic] Pine Lake Lane, Charlotte, North Carolina. Additionally,
upon said rental, Plaintiff received a number of S & H Green
Stamps which he mailed to Defendant herein.

(t) That Mrs. Mildred Triplett testified she was close
friends with Defendant herein and was a down-the-street
neighbor. That she and Defendant went on walks together on
a regular basis between 1979 and 1983 and at no time up un-
til November, 1983, did Defendant ever mention Plaintiff's
desire to separate or that the parties were separated. That in
November, 1983, Defendant advised Mrs. Triplett that she
had received a letter from Plaintiff indicating his desire to
separate. That Mrs. Triplett described Defendant's reaction
as being devastated, could not sleep or eat and was extreme-
ly surprised by Plaintiff's request.

(u) That Mrs. Nancy Smott testified for Defendant that
she was a neighbor of Plaintiff and Defendant's and had
known them since 1977. That she had seen or spoken with

Defendant on a daily basis from 1980 up through 1983. That at no time during this time frame did Defendant mention that she considered herself separated or unmarried. That during this time frame, this witness observed Plaintiff and Defendant together at their son's graduation where they sat as a family unit.

(v) That both Nancy Smott and Mrs. Triplett testified in their opinion [sic], based on their observations of the family, discussions with Defendant, observations of the home, observations of Plaintiff and the family when he was at the home, that the relationship existing between Plaintiff and Defendant and the manner in which they held themselves out to the public did not change until after December 26, 1983 when Plaintiff no longer returned home.

(w) That Jeff Hall, son of Plaintiff and Defendant, testified ,that he helped his mother obtain a lawyer in 1979 as above referenced and further overheard the telephone conversation above-referenced wherein Plaintiff told Defendant to terminate the services of the lawyer. That subsequent to that event, the relationship between Plaintiff and Defendant was as it had been preceding Plaintiff's move to Boston and at no time was there any mention to him by either Plaintiff or Defendant of their being separated. That subsequent to Plaintiff moving to Boston, he regularly returned home and interacted with the family as he always had. He regularly referred to the Charlotte property as his "home." That in November, 1983, Defendant herein called Jeff Hall at N.C. State University where he was in school and advised him of the letter she had received from Plaintiff requesting a separation. At that time Defendant was extremely upset and surprised.

(x) That Michael Hall, son of Plaintiff and Defendant, testified for Defendant herein. That there were no discussions concerning separation in his presence, nor did Plaintiff and Defendant interact after January, 1979, in any different manner than before the year 1979. That the first time he became aware of any intent to separate was in November, 1983.

(y) That Plaintiff testified it was his intent to permanently separate from Defendant in 1978 at the time of his move to

Boston and at no time did he intend to resume the marital relationship with Defendant herein. That Plaintiff only visited the family on the above-described occasions when he was in Charlotte on business trips except for Thanksgiving, Christmas and his son's graduation and the other visits were for the purposes of visiting the children and not maintaining a marital relationship. That Plaintiff and Defendant had not had sexual intercourse since 1978 and slept in separate bedrooms since about the same time.

Each of these findings is supported by some competent evidence in the record; therefore, they are binding on appeal. *See Lawing v. Lawing*, 81 N.C. App. 159, 344 S.E. 2d 100 (1986). The court's findings indicate that at all times prior to December 1983 the relationship between plaintiff and defendant was of such a character as to give the appearance that they were husband and wife living together and that they held themselves out to be such. These findings are sufficient to support the conclusion that separation, as that term is defined by case law, did not occur until 26 December 1983.

Plaintiff also argues the court erred in basing its conclusion in part upon the opinions of Nancy Smott, Mildred Triplett and the couple's two sons with respect to the date of the parties' separation. Even if the court erred in finding facts based upon the opinions of these witnesses, plaintiff has not been prejudiced because the other findings of fact quoted above are sufficient to support the court's conclusion. Therefore, the conclusion will not be disturbed. *See Wachovia Bank v. Bounous*, 53 N.C. App. 700, 281 S.E. 2d 712 (1981).

[2] Defendant next contends that the court erred in its classification of certain options to purchase shares of Colgate-Palmolive stock at set prices which plaintiff had been granted by his employer. We agree. According to the court's findings, on 8 March 1979, plaintiff was granted options to purchase 1,500 shares. These options were exercisable as follows: 500 shares on 8 March 1981, 500 shares on 8 March 1983 and 500 shares on 8 March 1985. As of the date of separation, plaintiff could have exercised his options to purchase 1,000 shares of stock. On 12 March 1981, plaintiff was granted options to purchase 1,200 additional shares. As of the date of separation plaintiff could exercise his options to pur-

chase 400 shares of this stock. The remainder of the option was exercisable in two equal parts in March 1985 and March 1987. On 28 April 1982, plaintiff received options to purchase an additional 1,500 shares of stock. Plaintiff could not exercise any part of these options as of the date of separation; the option became exercisable in three equal parts in April 1984, April 1986, and April 1988. In March 1983, plaintiff received options to purchase 1,200 shares of stock. These options became exercisable in three equal parts in March 1985, March 1987 and March 1989. The stock options which were not yet exercisable were subject to cancellation if the plaintiff was terminated for cause and only those which were vested were exercisable for limited periods of time in the event plaintiff voluntarily left the company for reasons other than retirement, disability or death. In sum, plaintiff had been granted options to purchase 5,400 shares of stock; however, as of the date of separation, he had a vested right to exercise options to purchase only 1,400 shares. As of the date of trial, plaintiff had not exercised options to purchase any of the stock.

The trial judge classified the stock options for all 5,400 shares as marital property but stated that she was unable to determine the value of the options. Plaintiff was ordered to exercise all the options; "one-half of any and all amounts of profit realized by Plaintiff in the exercise of any of the options . . . [including] amounts realized by direct stock purchase at option price and resale, or the exercise of Stock Appreciation Units or Equity Units and . . . exclusive of any tax implications" was placed in a constructive trust for defendant. The court allowed brokerage commissions to be deducted.

Plaintiff contends that none of the options are marital property since none had been exercised as of the date of the parties' separation. Alternatively, he contends that, at most, only the options for 1,400 shares which were exercisable on the date of separation should be classified as marital property. While we reject the first contention, we agree with the latter.

The classification and distribution of employee stock options under our equitable distribution statutes is an issue of first impression in this jurisdiction. Other jurisdictions have treated employee stock options in various ways. *See, e.g., Richardson v. Richardson,* 280 Ark. 498, 659 S.W. 2d 510 (1983) (unexercised

stock options obtained during marriage are marital property); *In re Marriage of Moody*, 119 Ill. App. 3d 1043, 75 Ill. Dec. 581, 457 N.E. 2d 1023 (1983) (stock options which had not been exercised were not marital property); *Callahan v. Callahan*, 142 N.J. Super. 325, 361 A. 2d 561 (1976) (stock options granted by employer were a form of compensation and constituted marital property). We believe that the approach most consistent with North Carolina's equitable distribution statutes is to classify stock options granted an employee by his or her employer which are exercisable upon the date of separation or which may not be cancelled, and which may, therefore, be said to be vested as of the date of separation, as marital property. Options which are not exercisable as of the date of separation and which may be lost as a result of events occurring thereafter, and are, therefore, not vested, should be treated as the separate property of the spouse for whom they may, depending upon circumstances, vest at some time in the future. In our view, this rule more closely recognizes the purpose of stock options granted an employee which are designed so that they vest and become exercisable over a period of time; such options represent both compensation for the employee's past services and incentives for the employee to continue in his employment in the future. Those options which have already vested are clearly rewards for past service rendered during the marriage, and, therefore, are marital property; options not yet vested are in essence, an expectation of a future right contingent upon continued service and should be considered separate property. *See* G.S. 50-20(b)(2); *Johnson v. Johnson*, 74 N.C. App. 593, 328 S.E. 2d 876 (1985) (expectation of nonvested pension or retirement rights considered separate property).

Accordingly, we hold that the trial court erred by classifying all of the stock options as marital property; only options for the purchase of 1,400 shares should have been so classified, with the balance classified as plaintiff's separate property. Moreover, since the value of those options which were exercisable on the date of the parties' separation may be easily ascertained, the trial court must determine their value as provided by G.S. 50-21(b) and provide for their distribution in a manner approved by G.S. 50-20.

[3] Plaintiff next contends that the court erred in permitting defendant's witness, Dr. J. C. Poindexter, to testify as an expert witness in four areas: valuing plaintiff's employee savings and in-

vestment plan, valuing his employee pension plan, valuing the stock options, and valuing the "human capital" or earning capacity of the parties. Plaintiff contends that Dr. Poindexter was not properly qualified as an expert. We disagree.

"The decision to qualify a witness as an expert is ordinarily within the exclusive province of the trial judge or hearing officer." *State ex rel. Comr. of Insurance v. N.C. Rate Bureau,* 75 N.C. App. 201, 230, 331 S.E. 2d 124, 144, *disc. rev. denied,* 314 N.C. 547, 335 S.E. 2d 319 (1985). Dr. Poindexter testified that he is an Associate Professor of Economics in Business at North Carolina State University in Raleigh. He holds a Bachelor of Science degree in Mechanical Engineering from the University of Virginia and a Ph.D. degree in Economics from the University of North Carolina at Chapel Hill. He teaches a course on the techniques of present value calculations and has authored or co-authored three or four textbooks and six to ten journal articles using the same skills and techniques used to value the assets at trial. Further, Dr. Poindexter explained the techniques which he used to value each asset as he rendered his opinions. This evidence is sufficient to permit a finding that, by reason of his specialized knowledge, Dr. Poindexter was in a position to assist the court, as fact finder, in determining relevant facts, i.e., the value of certain marital assets. Thus, we find no abuse of discretion in the trial court's ruling permitting Dr. Poindexter to testify as an expert witness.

[4] Plaintiff also assigns error to the trial court's valuation of a limited partnership tax shelter which he had purchased from Equity Programs Investment Corporation in 1982. The total cost of the partnership interest was $37,250.00. The court valued the interest at $43,000.00. We find no evidence in the record to support such a valuation; it is, therefore, error and vacated.

Plaintiff also contends the court erred by including a sailboat, valued at $17,000.00, in the marital property to be distributed to him. He argues that there is neither evidence nor a finding of fact to support the classification of the sailboat as marital property or its valuation. Defendant concedes that all discussions concerning the sailboat took place off the record and that the findings of fact in the trial court's order do not support its disposition of this asset. Accordingly, the court's valuation and distribution of the sailboat must also be vacated.

## Defendant's Appeal

[5]  Defendant assigns error to the trial court's conclusion that "an equal division of the marital assets is equitable." Defendant contends the facts found by the trial court compel an unequal division in her favor. We disagree.

G.S. 50-20(c) lists twelve factors the court must consider in determining whether an equal division is equitable. "[T]he statute is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made *mandatory* 'unless the court determines that an equal division is not equitable.'" *White v. White*, 312 N.C. 770, 776, 324 S.E. 2d 829, 832 (1985), *quoting* G.S. 50-20(c) (emphasis in original). "When evidence tending to show that an equal division of marital property would not be equitable is admitted, however, the trial court must exercise its discretion in assigning the weight each factor should receive in any given case." *Id.* at 777, 324 S.E. 2d at 833. The trial court's ruling may be overturned by the appellate court only if there is a clear abuse of discretion indicating the ruling "was so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 777, 324 S.E. 2d at 833.

The burden is on the party seeking an unequal division of marital assets to prove by a preponderance of the evidence that an equal division is not equitable. *Id.* The trial court examined the factors of G.S. 50-20(c) and concluded that an equal division is equitable. We find no abuse of discretion in that conclusion. However, in view of our decision that this case must be remanded for further proceedings in order that the parties' property may be properly classified and valued, we hasten to add that our holding with respect to the issue raised by defendant's appeal should not be construed as the law of the case and binding on the trial court in making its new determination as to an appropriate disposition of the parties' property. Upon remand, the court must decide *de novo* the manner in which the marital property should be divided, including a determination of whether equal distribution is equitable.

### Conclusion

We find no error in the trial court's determination of the date of the parties' separation and affirm its decision with respect

thereto. For errors in the classification, valuation and distribution of the parties' property, however, we must vacate the order of distribution and remand this case in order that the parties' property may be classified consistently with this opinion and valued and distributed according to law.

Affirmed in part, vacated in part, and remanded.

Judges EAGLES and PARKER concur.