IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-442

Filed: 2 June 2020

Iredell County, No. 16 CVD 3040

SARAH RICHTER, Plaintiff,

v.

ALLEN RICHTER, Defendant.

Appeal by plaintiff from order entered 29 November 2018 by Judge Edward L. Hedrick, IV in District Court, Iredell County. Heard in the Court of Appeals 30 October 2019.

*Pope McMillan, P.A., by Clark D. Tew, for plaintiff-appellant.*

*Lake Norman Law Firm, by Adam G. Breeding, for defendant-appellee.*

STROUD, Judge.

At issue is whether the trial court erred in classifying proceeds from a life insurance policy on the life of Husband's former wife, paid to Husband during his marriage to Wife, as a gift to Husband and thus his separate property. Based upon this classification of the life insurance proceeds, the trial court also classified other assets acquired with the proceeds as Husband's separate property. Where Husband did not own the life insurance policy and paid no premiums for the policy during the parties' marriage, the trial court did not err by classifying the proceeds as a gift to

Husband. The trial court's findings of fact are supported by the evidence and those findings support the trial court's conclusion of law classifying the disputed assets as Husband's separate property, so we affirm the trial court's order.

## I.        Background

The parties married on 16 April 2011. Husband had been previously married to Jeanne Richter with whom he had two children. Husband and Wife had one child in 2012. During the parties' marriage, Jeanne Richter passed away, and proceeds from her life insurance policy in the amount of $500,603.68 were paid to Husband ("life insurance proceeds"). Wife filed a complaint in December 2016 with claims for child custody and support, divorce from bed and board, postseparation support and alimony, and counsel fees. Because the parties had not yet separated, Wife also noted her intent to file for equitable distribution after their separation.

On 10 February 2017, the parties separated. Husband then filed his answer and counterclaims for custody, child support, and equitable distribution. On 18 April 2017, Wife filed an amended complaint including a claim for equitable distribution. Both parties sought distribution of their marital property.

Husband listed the following items as his separate property on his equitable distribution affidavit based upon his claim that they were purchased with the life insurance proceeds: real property in Mooresville ("Fieldstone house"), a Prudential Alliance Account, a Prudential Retirement B Annuity, and a Prudential IRA

(collectively, "the disputed assets"). The life insurance proceeds from his former wife were initially deposited into the Prudential Alliance Account. Prior to the parties' separation, Husband transferred money from the Alliance Account to establish the IRA and the Retirement Annuity Account. For purposes of clarity and because these were the accounts the trial court classified, we will refer to these accounts respectively as the Alliance Account, the IRA, and the Annuity Account.

In a pretrial order for equitable distribution, the parties listed the Fieldstone house under Schedule E, which was defined as "items as to which there is disagreement as to whether the item is martial property or a marital debt." Wife alleged the real property was "purchased with comingled funds" and should be classified as marital; Husband alleged it should be classified as separate. The IRA and Annuity Account were also listed on Schedule E, with Wife alleging they should be classified as marital and Husband alleging they were his separate property. The Alliance Account was listed on Schedule H, "Items agreed by parties as Husband's separate property" because "Husband acquired during marriage from deceased ex-wife."

The equitable distribution claims were heard before the Honorable Edward L. Hedrick, IV on 26 and 28 September, and 1 October 2018 in District Court, Iredell County. The trial court found the Alliance Account, the IRA, and the Annuity Account were established entirely from the life insurance proceeds and were therefore

the separate property of Husband.  The trial court classified the Fieldstone house as part marital and part Husband's separate property.  Husband purchased the home with the life insurance proceeds, but the parties made improvements to the house during the marriage which increased the value.  Wife timely appealed.

## II.    Classification of Life Insurance Proceeds

Wife argues the trial court erred in classifying the life insurance proceeds and property acquired with the life insurance proceeds during the marriage as Husband's separate property.   Husband disagrees with Wife's framing of the issue as classification of the life insurance "proceeds" since some of the proceeds had been transferred to other accounts and contends the parties stipulated in the pretrial order that the Alliance Account was his separate property, and since the other assets came from the Alliance Account, this stipulation resolved the classification of all of the disputed assets, including the Fieldstone house, the IRA, and the Annuity Account. Husband's argument is logically based upon the evidence and theories presented by Wife at trial, but the pretrial order's stipulation is not so broad as he claims.  And although Wife's evidence at trial focused primarily on whether Husband had converted separate funds from the life insurance proceeds to marital property by comingling assets, Wife is correct that the issue on appeal is "not whether the purportedly separate property of the Defendant was, through his actions or

intentions, converted into marital property . . . but whether or not the Life Insurance

Proceeds were the Defendant's separate property to begin with."

A.    Standard of Review

> "Pursuant to N.C. Gen. Stat. § 50-20 [ (2017) ],
> equitable distribution is a three-step process requiring the
> trial court to '(1) determine what is marital [and divisible]
> property; (2) find the net value of the property; and (3)
> make an equitable distribution of that property.'" Under
> North Carolina law, marital property is "all real and
> personal property acquired by either spouse or both
> spouses during the course of the marriage and before the
> date of the separation of the parties, and presently owned,
> except property determined to be separate property or
> divisible property[.]" Separate property is that acquired by
> a spouse before marriage, or acquired by devise, descent, or
> gift during the marriage. Generally, divisible property
> refers to certain property received after the date of
> separation but prior to distribution.

*Crago v. Crago*, ___ N.C. App. ___, ___, 834 S.E.2d 700, 704 (2019) (alterations in

original) (citations omitted), *review denied*, ___ N.C. ___, 838 S.E.2d 181 (2020).

Wife challenges some of the trial court's findings of fact and the conclusion of

law classifying the assets acquired with the life insurance proceeds.

> On appeal, when reviewing an equitable distribution order,
> this Court will uphold the trial court's written findings of
> fact "as long as they are supported by competent evidence."
> However, the trial court's conclusions of law are reviewed
> *de novo*. Finally, this Court reviews the trial court's actual
> distribution decision for abuse of discretion.

*Mugno v. Mugno*, 205 N.C. App. 273, 276, 695 S.E.2d 495, 498 (2010) (citations

omitted).

B.      Effect of Stipulation Regarding Alliance Account

Both parties devote much of their briefs to a dispute regarding the meaning and effect of the stipulation in the pretrial order regarding the classification of the Alliance Account as Husband's separate property. Husband contends this stipulation covers not only the Alliance Account but also the Fieldstone house, the IRA, and the Annuity Account, since funds from the Alliance Account were used during the marriage to acquire each of these assets. Wife contends the stipulation does not apply to any asset other than the Alliance Account, but she also argues that the trial court improperly relied upon the stipulation in classifying the other disputed assets, based upon the trial court's statement in Finding of Fact 30, "This finding is consistent with the parties' stipulation regarding the funds remaining in the Alliance Account pursuant to Section H of the Pretrial Equitable Distribution Order." Both parties assign far more importance to the stipulation than it deserves, and, instead of simplifying the issues, their arguments regarding the stipulation have made the one classification issue presented on appeal more complex.

In the parties' equitable distribution affidavits, both clearly identified each of the disputed assets individually—the Alliance Account, the IRA, the Annuity Account, and the Fieldstone house—and stated their contentions regarding the value, classification, and desired distribution for each asset. Although the "life insurance proceeds" are mentioned as the source of the assets, the life insurance proceeds

themselves had been received in April 2014, and Husband used the proceeds to acquire or establish the disputed assets. Likewise, in the pretrial order, the parties stipulated that "Husband's Prudential Alliance account" should be classified as the separate property of Husband. The pretrial order also listed the other disputed assets as individual assets and included the parties' contentions regarding each one. "It is well-established that stipulations in a pretrial order are binding upon the parties and upon the trial court." *Clemons v. Clemons*, ___ N.C. App. ___, ___, 828 S.E.2d 501, 505 (2019). Husband argues that Wife stipulated that all property acquired with funds originally in the Alliance Account—the entire life insurance proceeds—would be his separate property. Thus, he argues that there is no need to consider the classification of the Fieldstone house, the IRA, and Annuity Account—all would be his separate property because they flowed from the Alliance Account and this was stipulated to be his separate property. However, the stipulation regarding the Alliance Account was a stipulation only to the classification and value of that particular account as of the date of separation. Neither the pretrial order nor the trial court's equitable distribution order classified the life insurance proceeds as a discrete asset existing on the date of separation; this is appropriate, since Husband received the life insurance proceeds in April 2014 but the parties separated on 10 February 2017. The trial court is required to classify and value property existing as of the date of separation. *Robinson v. Robinson*, 210 N.C. App. 319, 323, 707 S.E.2d

785, 789 (2011). Both the pretrial order and equitable distribution order addressed the various assets existing as of the date of separation, including those acquired with the life insurance proceeds. Husband is correct that Wife is bound by the stipulation as to the classification of the Alliance Account as listed on the pretrial order. But the other accounts and Fieldstone house were clearly listed separately on the pretrial order and the parties did not agree on the classification of those assets. The stipulation regarding the Alliance Account did not require the trial court to classify all of the disputed assets as Husband's separate property and does not prevent Wife's challenge to the trial court's classification of the Fieldstone house, the IRA, and Annuity Account. The stipulation only applies to the Alliance Account, which the trial court properly classified as Husband's separate property based upon the stipulation.

Wife argues the trial court improperly relied upon the stipulation as part of its classification of the disputed assets. We will address the classification issue in more detail below, but upon consideration of all of the findings in context, the trial court did not classify the disputed assets based upon the stipulation regarding the Alliance Account. The trial court simply noted the classification of the other disputed assets as separate property (or partially separate, as to the Fieldstone house) was consistent with the stipulation but there is no indication the trial court relied upon the stipulation to classify any asset other than the Alliance Account.

C.    Findings of Fact

Wife challenges several findings of fact regarding the life insurance proceeds

and properties acquired with the proceeds.  The findings address the source of the

insurance proceeds and then the acquisition of other properties with the proceeds.

The first finding challenged, Finding 30, includes both findings of fact regarding

Husband's receipt of the insurance proceeds and conclusions of law regarding the

classification as separate property.  We will first address the factual portion of

Finding of Fact 30, as most of the other findings and conclusions relevant to the issues

on appeal rely upon these factual findings.  The trial court found as follows:

> 30. Before Defendant was married to the Plaintiff, he was
> married to Jeanne K. Richter.  With Jeanne Richter, the
> Defendant had two children, now aged 15 and 13.  On or
> about August 27, 2013 Jeanne Richter executed a will
> acknowledging that she was divorced and leaving all of her
> property to the children of Defendant and Jeanne Richter.
> On or about March 28, 2014, Jeanne Richter appointed the
> Defendant her attorney in fact.  On March 31, 2014 Jeanne
> Richter died.  Defendant was the beneficiary of a life
> insurance policy on her life and as a result of her death, the
> Defendant received $500,603.88 on or about April 9, 2014
> which was disbursed to a Prudential Alliance Account.
> These funds were acquired during the marriage and some
> of the funds as well as items purchased with the funds
> existed on the date of separation.  They were not acquired
> by devise (by will) or by descent (Defendant was not related
> to Jeanne Richter at the time of her death).

The portion of Finding of Fact 30 quoted above includes findings of fact, and

these are supported by competent evidence.  Indeed, the basic facts as Husband's

prior marriage and divorce, the date of Mrs. Richter's death, and Husband's receipt of the insurance proceeds are not disputed. It is also undisputed that the insurance proceeds were not acquired by will or descent. The dispute is whether the trial court erred in classifying the life insurance proceeds as a gift under North Carolina General Statute § 50-20(b)(2).

Wife also challenges Findings of Fact 31, 32, 33, 39, 40, 48, 49, and 50. But the basis for her challenge to each of these findings is the same as to Finding 30. Findings 31 through 33 address the marital and separate contributions to the Fieldstone house, based upon the prior finding that Husband used his separate funds from the insurance proceeds to purchase the house.[1] Findings 39 and 40 address the IRA and Annuity Account, which were established entirely with funds from the insurance proceeds. Findings 48, 49, and 50 include listings of the classifications and values of all the parties' property, including the disputed assets previously addressed in the prior findings. Thus, because the factual findings of Finding 30 are supported by competent evidence, the remaining findings challenged by Wife are also supported by the evidence.

D. Classification of Property

---

[1] The trial court held the Fieldstone house was partially separate and partially marital, based upon marital contributions to renovation of the house. Wife challenges the findings of fact and classification of the Fieldstone house only as to the separate component based upon Husband's purchase of the house with the life insurance proceeds.

The remainder of Finding of Fact 30 is actually a conclusion of law, as it addresses classification of the assets acquired with the life insurance proceeds. We review the conclusion of law *de novo*. *Robbins v. Robbins*, 240 N.C. App. 386, 396, 770 S.E.2d 723, 729 (2015) ("Because the classification of property in an equitable distribution proceeding requires the application of legal principles, this determination is most appropriately considered a conclusion of law." (quoting *Hunt v. Hunt*, 112 N.C. App. 722, 729, 436 S.E.2d 856, 861 (1993))). "While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable *de novo*." *Id.* at 395, 770 S.E.2d at 728 (citing *Lee v. Lee*, 167 N.C. App. 250, 253, 605 S.E.2d 222, 224 (2004)).

North Carolina General Statute § 50-20 defines "separate property" in pertinent part as follows:

> "Separate property" means all real and personal property acquired by a spouse before marriage or acquired by a spouse by devise, descent, or gift during the course of the marriage. . . . Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance. The increase in value of separate property and the income derived from separate property shall be considered separate property.

N.C. Gen. Stat. § 50-20(b)(2) (2019).

The remainder of Finding of Fact 30 addresses the source of the funds in the IRA and Annuity Account and for the purchase of the Fieldstone house and includes the trial court's conclusion of law as to classification of the disputed assets. The trial court concluded that the insurance proceeds were a gift to Husband, as follows:

> 30. . . . However, these funds [the life insurance proceeds] were acquired by the Defendant by gift. Although the actual trigger for the transfer may have been a contractual obligation of Prudential to Jeanne Richter; Defendant's position as the beneficiary of the contract was without consideration paid by Plaintiff or Defendant to Jeanne Richter or to Prudential. This $500,603.68 was received by Defendant during his marriage to the Plaintiff from a third party without consideration of the Plaintiff or Defendant and is therefore a gift and is therefore Defendant's separate property. This finding is consistent with the parties' stipulation regarding the funds remaining in the Alliance Account pursuant to Section H of the Pretrial Equitable Distribution Order.

Because this portion of Finding 30 applies legal analysis to the facts and draws the conclusion that the insurance proceeds should be classified as a gift to Husband and thus his separate property under North Carolina General Statute § 50-20(b)(2) we review this conclusion *de novo*. *Blair v. Blair*, 260 N.C. App. 474, 478, 818 S.E.2d 413, 417 (2018) ("[T]he labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review. If the trial court labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' de novo." (quoting *Westmoreland v. High Point Healthcare Inc.*, 218 N.C. App. 76, 79, 721 S.E.2d 712, 716 (2012))).

This Court has very recently addressed the issue of classification of life insurance proceeds on the former spouse of a party in *Crago*, ___ N.C. App. ___, 834 S.E.2d 700. Although the life insurance policy at issue here is different from *Crago* because there was no marital contribution to the premiums and neither party owned the policy, this Court's analysis of the question helps highlight the factors relevant to the classification of insurance proceeds.

In *Crago*, the defendant-wife was married previously to Mr. Heintz and they had two children. *Id.* at ___, 834 S.E.2d at 703. In 2004, defendant-wife and Mr. Heintz took out a $1,000,000 life insurance policy on his life, naming defendant-wife as beneficiary. *Id.* at ___, 834 S.E.2d at 703. Defendant-wife and Mr. Heintz separated and later divorced. *Id.* at ___, 834 S.E.2d at 703. In 2007, Defendant-wife married plaintiff-husband, Mr. Crago. *Id.* at ___, 834 S.E.2d at 703. The defendant-wife continued to pay premiums on the life insurance policy on Mr. Heintz during her marriage to Mr. Crago. *Id.* at ___, 834 S.E.2d at 703. She used marital funds to pay the premiums on the life insurance policy. *Id.* at ___, 834 S.E.2d at 703. In 2015, Mr. Heintz died, and defendant-wife received the life insurance proceeds. *Id.* at ___, 834 S.E.2d at 703. In 2016, she and plaintiff-husband separated. *Id.* at ___, 834 S.E.2d at 703. In their equitable distribution order, the trial court determined the life insurance proceeds were marital property, and this Court affirmed. *Id.* at ___, 834 S.E.2d at 710.

The *Crago* Court first rejected an "analytic" approach to the classification of the insurance proceeds. *Id.* at ___, 834 S.E.2d at 704. The defendant-wife argued the analytic approach should be used based upon the fact that the insurance proceeds were intended for the benefit of the minor children of her marriage to Mr. Heintz. *Id.* at ___, 834 S.E.2d at 704-05. The Court determined the "mechanistic" approach must be used:

> North Carolina courts have adopted two different approaches for determining what is marital and separate property: the "mechanistic" approach and the "analytic" approach. In *Johnson v. Johnson*, our Supreme Court described the mechanistic approach as:
>> literal and looks to the general statutory definitions of marital and separate property and concludes that since the award was acquired during the marriage and does not fall into the definition of separate property or into any enumerated exception to the definition of marital property, it must be marital property.
> In contrast, "[t]he analytic approach asks what the award was intended to replace," focusing on the purpose of the compensation rather than its statutory definition.
>> In support of her argument the trial court erred by not applying the analytic approach, defendant cites several cases concerning classification of personal injury settlements and disability benefits. However, defendant also acknowledges North Carolina courts have never applied this approach in the context of life insurance proceeds. Nevertheless, she urges us to adopt the analytic approach in this case, based on "important public policy considerations" surrounding whether life insurance proceeds intended to benefit a spouse's children from another marriage should be considered marital property. Furthermore, she argues *Foster* is distinguishable from the

present case and therefore should not be binding on this Court.

 In *Foster*, the husband and wife had purchased a life insurance policy on their children during their marriage. After the parties separated, the husband alone paid the premiums for the policy. During the separation period, one of the children passed away and the life insurance proceeds were paid and placed in a trust account. In divorce proceedings, the wife claimed the life insurance proceeds were a marital asset because some of the policy premiums had been paid for with marital funds. We disagreed, holding that because the claim for death benefits did not arise until after separation, when their son passed away, the policy proceeds were the husband's separate property. In making our ruling, we noted that, pursuant to N.C. Gen. Stat. § 50-20, "in order for property to be considered marital property it must be 'acquired' before the date of separation and must be 'owned' at the date of separation."

 Defendant argues the present case is distinguishable from *Foster* because that case concerned a life insurance policy on the lives of the parties' own children, whereas the policy in dispute here covered the life of her ex-husband and was intended to be used to care for her children from her prior marriage. However, the relevant fact under the mechanistic approach we applied in *Foster* was whether the property was acquired before the date of separation, not who the policy covered or what its intended purpose was.

*Id.* at \_\_\_, 834 S.E.2d at 704-05 (alteration in original) (citations omitted).

 Here, the trial court stated its rationale as follows:

Defendant's position as the beneficiary of the contract was without consideration paid by Plaintiff or Defendant to Jeanne Richter or to Prudential. This $500,603.68 was received by Defendant during his marriage to the Plaintiff from a third party without consideration of the Plaintiff or Defendant and is therefore a gift and is therefore Defendant's separate property. This finding is consistent

with the parties' stipulation regarding the funds remaining in the Alliance Account pursuant to Section H of the Pretrial Equitable Distribution Order.

The trial court's finding of fact that the parties paid no consideration for the insurance policy is supported by record. There was no evidence any premiums were paid by Husband during the marriage, so there was no marital financial contribution to the life insurance. This is an important factual difference between this case, *Crago*, and *Foster v. Foster*, 90 N.C. App. 265, 368 S.E.2d 26 (1988).

In *Crago*, this Court rejected the defendant-wife's argument that the life insurance proceeds should be classified as partially separate based upon the source of funds for the premiums. *Crago* ___ N.C. App. at ___, 834 S.E.2d at 705. She argued that some of the funds in the account she used to pay the premiums were her separate property, so the proceeds should be classified as part separate and part marital using the source-of-funds approach. *Id.* at ___, 834 S.E.2d at 706. But the Court rejected this approach because the defendant-wife had failed to trace the funds in the account from which she paid the premiums and thus did not prove she had paid any premiums, particularly the "last life insurance premium," with her separate funds. *Id.* at ___, 834 S.E.2d at 706. Since all of the premiums paid during the marriage were from marital funds, this Court affirmed the trial court's rejection of the source-of-funds approach to classification of the insurance proceeds. *Id.* at ___, 834 S.E.2d at 706 ("Accordingly, the trial court's finding that the account ending in 3207 was

marital, and thus the funds used to pay the last life insurance premium were marital, was not an abuse of discretion.").

The analysis of the source-of-funds issue in *Crago* and its reliance upon *Foster* and *McIver v. McIver*, 92 N.C. App. 116, 124, 374 S.E.2d 144, 149 (1988), shows that the holding was based not just upon the fact that the insurance proceeds were received during the marriage and owned on the date of separation, but also on the fact that the "last insurance premium" was paid with marital funds. *Crago*, ___ N.C. App. at ___, 834 S.E.2d at 706; see *McIver*, 92 N.C. App. at 124, 374 S.E.2d at 149-50 ("North Carolina has adopted the 'source of funds' rule in determining whether property is marital or separate. Under the source of funds analysis, property is 'acquired' as it is paid for, and thus may include both marital and separate ownership interests. Under the rule, property acquired with separate funds prior to marriage remains separate, and is not converted to marital property merely because it was purchased in anticipation of marriage." (citation omitted)). Here, Husband did not pay for the life insurance policy at all. This factual difference in the payment of premiums and policy ownership between this case, *Crago*, and *Foster* is essential to the classification issue.

In this case, no insurance premiums on the former Mrs. Richter's life were paid from marital funds or by Husband during the marriage. The trial court found that Husband received the life insurance proceeds "from a third party without

consideration of the Plaintiff or Defendant." Husband was the beneficiary of the policy but not the owner, and he did not pay premiums on the policy during the marriage, so there was *no* marital contribution to the acquisition or maintenance of the policy, as in *Crago* and *Foster*.

This Court also addressed the source of funds in *Foster*, 90 N.C. App. 265, 368 S.E.2d 26. It is easy to overlook the portion of *Foster* which addresses the cash value of the policy as of the date of separation, which was only $20.00, but this part of the analysis is important. In *Foster*, a portion of the policy value was classified as marital based upon the payment of premiums during the marriage, but as of the date of separation, the only value attributable to the marriage was the cash value. *Id.* The insurance policy on the child's life had a cash value of $20.00 as of the date of separation. *Id.* The insured child died after the parties' separation, and the husband was the beneficiary of the policy and had continued to pay premiums after the date of separation. *Id.* The *Foster* Court noted the fact that the right to collect under the policy vested only upon the child's death, after the date of separation, but did not classify the policy as entirely separate. *Id.* at 268, 368 S.E.2d at 28. Instead, *Foster* held that the insurance proceeds had a dual classification. *Id.* The $20.00 cash value was classified as marital, based upon the value of the policy as of the date of separation; the $20,000 proceeds for the child's accidental death were classified as husband's separate property based upon the vesting of the benefits after separation

*and* the husband's payment of premiums on the policy after separation. *Id.* The

*Foster* Court based this analysis on a comparison to the vesting of stock options:

> In *Hall v. Hall,* 88 N.C. App. 297, 363 S.E.2d 189 (1987), this Court held that stock options which were vested prior to separation were marital property but those which had not vested prior to separation were separate property. In the present case, at the time of separation there were no vested rights under the insurance policy on the life of Richie M. Foster. The rights only vested at the death of Richie M. Foster, and until then plaintiff, as owner of the policy, could have cancelled the policy or changed the beneficiary. At the time of separation, the cash value of the insurance policies was marital property since the premiums to that point had been paid for with marital assets. The premiums after separation were paid for with plaintiff's assets and therefore the proceeds from the insurance policy were separate property of plaintiff.

*Id.*

Therefore, although life insurance does not fit neatly into the methods of

classification used for other assets such as real estate, and life insurance policies of

different types will present different factual issues, it is clear that our Courts have

applied the same legal analysis to the classification of life insurance policies as other

assets. In *Foster*, the vested cash value of the whole life policy as of the date of

separation was classified as marital, *id.*; a term life insurance policy normally has no

cash value. In *Crago*, this Court affirmed the trial court's determination that the

premiums paid during the marriage were paid from marital funds and classified the

proceeds as marital based upon a source-of-funds approach. ___ N.C. App. ___, 834

S.E.2d 700. Although *Crago* does not address whether the life insurance policy at issue was a term policy with no cash value, a whole life policy with a cash value, or some other form of policy, *Crago* rejected classification as separate property of the wife based upon a source-of-funds approach because defendant-wife failed to show premiums were paid with her separate funds.[2] *See id.*

This case is different from both *Foster* and *Crago* because there was absolutely no marital contribution to the life insurance policy. It was not an asset purchased by either party, either during the marriage or after separation. Husband's former wife owned and paid for the life insurance policy until her death. Although no prior North Carolina case has ever characterized life insurance proceeds as a gift for purposes of equitable distribution, no case has ever addressed insurance proceeds owned and paid for by a third party but received during the marriage by one of the spouses. Thus, we will rely upon cases classifying gifts from third parties during the marriage to review the trial court's conclusion the proceeds were a gift and thus Husband's separate property.

Wife agrees we should rely upon cases regarding gifts from a third party but argues the trial court erred in classifying the life insurance proceeds as a gift because Husband failed to present evidence of "donative intent" by Husband's former wife.

---

[2] Based upon the facts and analysis in *Crago*, the life insurance policy was apparently a term policy. *See Crago v. Crago*, ___ N.C. App. ___, 834 S.E.2d 700. There was no mention of any cash value for the policy. *See id.*

She contends this case does not present an issue of first impression, as Husband argues, because "Appellant is actually asking this Court to apply its usual and customary gift analysis for an asset; the lack of case law specifically discussing this one asset type does not a case of first impression make." We agree we can apply the "usual and customary gift analysis" but that analysis is more straightforward for some assets than others. As discussed earlier, life insurance policies may be classified differently depending upon the type of policy, policy ownership, payment of premiums, vesting of the right to proceeds, and the relationship of the insured to the beneficiary. And no prior case in North Carolina has addressed life insurance proceeds from a policy on the life of a third party where the beneficiary-spouse paid no consideration for the policy.

Under the gift analysis discussed in *Burnett v. Burnett*, 122 N.C. App. 712, 471 S.E.2d 649 (1996), Husband had the burden of showing that the life insurance proceeds were his separate property. The *Burnett* Court discussed several factors which may show donative intent, and these factors may vary based upon the particular type of property in question:

> The party claiming a certain classification has the burden of showing, by the preponderance of the evidence, that the property is within the claimed classification. Thus a party claiming property acquired during the marriage to be separate, on the basis that it was a gift, has the burden of showing that the "alleged donor intended to transfer ownership of the property without receiving any consideration in return." . . .

- 21 -

> "The evidence most relevant in determining donative intent [or the lack of donative intent] is the donor's own testimony." Other evidence relevant to donative intent includes the testimony of the alleged donee, documents surrounding the transaction, whether a gift tax return was filed, and whether an excise tax was paid. Transfer documents stating that the property is a gift or characterizing the consideration as love and affection is strong evidence of donative intent. On the other hand, transfer documents indicating receipt of consideration is *prima facie* evidence that the recited consideration was indeed paid. A mere recital of consideration, however, does not compel a finding that consideration was received, if other evidence reveals that no consideration was in fact received. Bargain sales, or those where some small consideration is received in exchange for the transfer, if accompanied with donative intent, are treated as partial gifts.

*Burnett*, 122 N.C. App. at 714-15, 471 S.E.2d at 651-52 (second alteration in original) (footnote omitted) (citations omitted).

Wife argues Husband failed to present evidence of "donative intent" citing to several cases addressing gifts of various types of property in different factual settings. For example, in *Berens v. Berens*, this Court held that the parties' contributions to their children's 529 accounts were not "gifts" to the children, noting that

> "[i]n order to constitute a valid gift, there must be present two essential elements: 1) donative intent; and 2) actual or constructive delivery." "These two elements act in concert, as the present intention to make a gift must be accompanied by the delivery, which delivery must divest the donor of all right, title, and control over the property given."

260 N.C. App. 467, 469-70, 818 S.E.2d 155, 157-58 (2018) (citation omitted) (quoting

*Courts v. Annie Penn Mem'l Hosp., Inc.*, 111 N.C. App. 134, 138, 431 S.E.2d 864, 866

(1993)).  The *Berens* Court explained:

> Applying this settled property law principle, the parties' contributions to their 529 Savings Plans were not gifts.  In their briefs, both parties discuss various tax implications of 529 Savings Plan contributions at length.  But the treatment of these plans for tax purposes does not control the determination of ownership under the equitable distribution statute.  Instead, we look to whether the parties delivered an ownership interest in those funds to their children, thereby divesting themselves of that interest.
> They did not.

*Berens*, 260 N.C. App. at 470, 818 S.E.2d at 158 (citation omitted).

As recognized by *Berens*, treatment of property for tax purposes or in another

legal context may not control its classification for purposes of equitable distribution.

*Id.*  Indeed, classifying property based upon marital contribution instead of title or

other legal principles is one of the fundamental principles of the equitable

distribution statute.  *Hill v. Hill*, 229 N.C. App. 511, 518, 748 S.E.2d 352, 358 (2013)

("One of the purposes of the Equitable Distribution Act was 'to alleviate the

unfairness of the common law [title theory] rule' and to base property distribution

upon 'the idea that marriage is a partnership enterprise to which both spouses make

vital contributions . . . [.]'" (first and second alterations in original) (quoting *Friend–*

*Novorska v. Novorska*, 131 N.C. App. 508, 510, 507 S.E.2d 900, 902 (1998))).

In *Plymouth Pallet Co. v. Wood*, this Court stated the elements of a gift between

living persons:

> The essential elements of a gift *inter vivos* are: (1) the intent by the donor to give the donee the property in question so as to divest himself immediately of all right, title and control therein; and (2) the delivery, actual or constructive, of the property to the donee.

51 N.C. App. 702, 704, 277 S.E.2d 462, 464 (1981).

Some of the factors noted in prior cases dealing with gifts of real estate or stock simply do not exist in a case dealing with life insurance. One obvious difference is that life insurance proceeds are not "delivered" to the donee until after the donor's death; it is not a "gift *inter vivos*."[3] In equitable distribution cases in particular, where one spouse claims property was a gift, the analysis normally focuses on whether consideration was paid for the asset. For example, in cases addressing deeds to real estate to one or both spouses from a third party, courts have noted "documents surrounding the transaction, whether a gift tax return was filed, and whether an excise tax was paid." *Burnett*, 122 N.C. App. at 715, 471 S.E.2d at 651. All of the factors noted in *Burnett* address the issue of consideration for the transfer of real property. Excise taxes are based upon the purchase price for land. N.C. Gen. Stat. § 105-228.30 (2019); see *Patterson v. Wachovia Bank & Tr. Co., N.A.*, 68 N.C. App. 609, 612-13, 315 S.E.2d 781, 783 (1984) ("Under the provisions of G.S. 105-228.28, *et seq.*, every person who deeds real estate away for a consideration must pay the county an

---

[3] *Ownership* of a life insurance policy could be given or transferred during the insured's life, but we are discussing payment of life insurance proceeds upon death of the insured.

excise tax based on the consideration involved, but no tax is required of those who give property away. Yet, though the evidence shows that the property was worth over $90,000, and the plaintiff Ross Coble, the only living person with personal knowledge as to the consideration involved, if there was any, is the one who had the deeds eventually recorded, no excise stamps were ever affixed to the deeds by the grantors."). Gift tax returns are filed for gifts as defined by the applicable tax laws, but neither party here has made any argument based upon the treatment of the life insurance policy proceeds for tax purposes. In the cases addressing whether property is a gift, absence of consideration gives rise to an inference of donative intent, and thus a gift. *See Joyce v. Joyce*, 180 N.C. App. 647, 651, 637 S.E.2d 908, 911 (2006) (finding the transfer of property supported by adequate consideration from a father to son was not a gift). Payment of consideration gives rise to the opposite inference. *See id.*

Wife contends that Husband's evidence regarding the lack of consideration and the circumstances of his prior marriage and the insurance policy on Mrs. Richter's life was not sufficient to show Mrs. Richter's "donative intent." She argues Husband "failed to meet his burden of providing *any material evidence* that would establish or even hint at the origin, procuring circumstances and causes, or consideration (or lack thereof) for his status as Jeanne Richter's life insurance beneficiary." She claims, "Defendant's own testimony as to the various components of the Life Insurance

Proceeds was plainly silent on the purpose or intent of his status as a beneficiary, and largely in agreement with the Plaintiff's in that it confirmed his receipt of the Life Insurance Proceeds during his marriage, and confirmed their existence as of the date of separation." Wife is correct that Husband's testimony at trial focused more on the tracing of the life insurance funds to the IRA, the Annuity Account, and the Fieldstone house, as part of his argument that these assets were his separate property because the life insurance proceeds themselves were his separate property. But Husband's evidence was responding to Wife's contentions regarding classification of the disputed assets.

At trial, Wife did not contend that Mrs. Richter made a gift of the life insurance proceeds to both of the parties or that there was any marital contribution to the life insurance policy. Wife's arguments and evidence *at trial* addressed tracing of the funds and comingling of marital and separate funds. Her arguments at trial—until her closing argument—treated the life insurance proceeds as Husband's separate property when received but she contended he had commingled the insurance proceeds with marital assets; Husband responded by showing evidence the proceeds were not commingled with marital assets, except as to the Fieldstone house.

Wife acknowledged at trial she had stipulated that the remaining funds in the Alliance account were Husband's separate property *because* the funds came from the life insurance proceeds but she did not stipulate to the classification of the other

accounts because she did not know if any marital contributions were made to those accounts. Regarding the stipulation on Schedule H of the pretrial order, Wife testified the funds in the Alliance Account as of the date of separation were from the insurance proceeds:

> Q: So you have stipulated that his Alliance account is his separate property?
>
> A. That is the balance that is left as of the date of separation. He has used funds out of that account, and I believe there was money left over as of the date of separation. I'm not sure of the balance now. But yes, that part of it, that balance of the date of separation, is separate.

She then testified that she did not know whether marital funds had been contributed to the IRA and Annuity Account, although they were initially established with funds from the life insurance proceeds.

Both parties have presented a slightly different argument on appeal than they did before the trial court. This change is reflected in the parties' briefs, which devote a large part of their arguments to the stipulations instead of to the evidence. As we determined above, the stipulation regarding the Alliance Account did not entirely resolve the classification issues arising from the insurance proceeds, but the parties' equitable distribution affidavits and the pretrial order also present the classification issue as a tracing issue, not based upon the origin of the life insurance funds. Our Courts have long held that parties may not change horses on appeal to gain a better mount:

The issues before the trial court, however, were set out in a pretrial order to which plaintiff freely consented while represented by competent counsel, and plaintiff may not now take an inconsistent position on appeal. "The theory upon which a case is tried in the lower court must prevail in considering the appeal and interpreting the record and determining the validity of the exceptions." *Parrish v. Bryant*, 237 N.C. 256, 259, 74 S.E.2d 726, 728 (1953); *see also Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court[ ]"), and *In re Peirce*, 53 N.C. App. 373, 382, 281 S.E.2d 198, 204 (1981) (where respondents stipulated to the use of "recording machines in lieu of a court reporter," they waived on appeal any objection about the quality of the recording equipment used in the trial court).

*Inman v. Inman*, 136 N.C. App. 707, 714-15, 525 S.E.2d 820, 824-25 (2000) (alteration in original).

Neither party has entirely swapped horses on appeal, although both have at least changed the saddles on their horses. At trial, Wife's testified she agreed the life insurance proceeds should be classified as Husband's separate property but by the time of her closing argument, she attempted to avoid the stipulation and her own testimony. For the first time, she argued that none of the disputed assets should be classified as Husband's separate property because he had failed to show "donative intent" by Mrs. Richter, going so far as to claim that the trial court was not "bound by the pretrial order" and requesting the trial court to classify all of the disputed assets as fully marital. She argued:

Now, what does that include? Well, it includes the

> Fieldstone property. It includes the [IRA]. It includes the annuity. It includes the Ford Escape. And even though, Judge, even though it's listed on the Schedule, I think it was I,[4] the remainder of that Alliance account, I think, was listed there as a stipulation of separate property. I think that the evidence -- the Court isn't bound by that Pretrial Order, if during the course of the proceedings, evidence is offered that contradicts the Pretrial Order.

As discussed above, Husband's evidence did rely heavily on the stipulation that the Alliance Account was his separate property because it contained life insurance proceeds and all of the proceeds were initially in that account. Even though both parties have changed their theories or arguments on appeal to some extent, there was evidence from both Husband and Wife regarding the source of the life insurance proceeds and the circumstances under which he received them. Wife testified Husband and Mrs. Richter had previously shared 50-50 custody of their two sons but during her terminal illness, as her condition worsened, she became unable to care for the children, so they spent more time with Husband and Wife. Shortly before her death, Mrs. Richter agreed for Husband to have full custody of their sons and she was seeing them only on weekends and not overnight. On 27 August 2013, Mrs. Richter

---

[4] It was Schedule H, and the trial court was bound by the pretrial order. "It is well-established that stipulations in a pretrial order are binding upon the parties and upon the trial court. *Clemons*, ___ N.C. App. at ___, 828 S.E.2d at 505. The trial court may not *ex mero motu* modify or eliminate stipulations after completion of the trial without giving the parties "any notice or opportunity to respond to the modification." *Plomaritis v. Plomaritis*, 222 N.C. App. 94, 107, 730 S.E.2d 784, 793 (2012).

executed her Last Will and Testament in which she appointed Husband as her Executor. She left all her assets to her sons in trust and appointed Husband as her trustee and Wife as her alternate trustee. She also executed a Power of Attorney appointing Husband as her attorney-in-fact on 28 March 2014. Mrs. Richter's two sons were also the beneficiaries of her IRA accounts.

The trial court may draw reasonable inferences from the evidence, and based upon the circumstances of Mrs. Richter's death and Husband's position as sole custodian of their two children upon her death, the trial court's findings and conclusion that the life insurance proceeds should be classified as a gift to Husband are supported by the evidence.

> When a trial by jury is waived, and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge.
> In *Main Realty Co. v. Blackstone Valley Gas & E. Co.*, 59 R.I. 29, 193 A. 879, 112 A.L.R. 744, the court said: "In reaching his conclusions, the trial justice had the benefit of seeing and hearing the witnesses. He also was entitled to consider all the evidence and to draw therefrom such inferences as were reasonable and proper under the circumstances, even though another different inference, equally reasonable, might also be drawn therefrom."

*Elec. Motor & Repair Co. v. Morris & Assocs., Inc.*, 2 N.C. App. 72, 75, 162 S.E.2d 611, 613-14 (1968) (citation omitted).

Perhaps Wife could have argued at trial Mrs. Richter intended to benefit both her and Husband by the life insurance since at the time of her death, the parties were

together and caring for her two sons. But she did not make this argument. Instead, she argues on appeal that Husband should have presented more specific or detailed testimony about Mrs. Richter's "donative intent" in making him the beneficiary of her life insurance policy. Yet as in most cases in which there is a dispute regarding whether an asset was a gift to one of the spouses, the trial court may look to the circumstances of the case and may infer the donative intent from a transfer made without consideration. *See Burnett,* 122 N.C. App. at 715, 471 S.E.2d at 651. Husband was the sole beneficiary of the life insurance policy, which supports the trial court's conclusion that the former Mrs. Richter did not intend to make a gift of the proceeds to the marriage or to Wife. As simply stated in *Burnett,* "a party claiming property acquired during the marriage to be separate, on the basis that it was a gift, has the burden of showing that the 'alleged donor intended to transfer ownership of the property without receiving any consideration in return.'" 122 N.C. App. at 714, 471 S.E.2d at 651 (quoting Brett R. Turner, *Equitable Distribution of Property* § 5.16 at 195 (2d ed. 1994)). Although this particular question was not the primary focus of the evidence presented by either party at trial, Husband's evidence supported the trial court's findings of fact and those findings support the trial court's conclusion of law as to classification of the disputed assets. In fact, Wife's evidence tended to support the trial court's findings and classification as well.

### III.    Conclusion

Because the trial court's findings are supported by the evidence and those findings support the trial court's conclusion of law classifying the disputed assets as Husband's separate property, we affirm the trial court's order.

AFFIRMED.

Judges ZACHARY and MURPHY concur.